[No. 21971–5–I.   Division One.   June 12, 1989.]

WAYNE P. BARNES, ET AL, *Appellants,* v. CORNERSTONE
INVESTMENTS, INC., ET AL, *Defendants,* LAMB
HANSON LAMB APPRAISAL ASSOCIATES, INC.,
ET AL, *Respondents.*

*Stephen G. Smith,* for appellants.

*Larry Ransom, B. Jeffrey Carl,* and *Karr, Tuttle, Campbell,* for respondents.

PEKELIS, J.—Wayne and Suzanne Barnes and Arthur and Avis Beech appeal the trial court's summary judgment dismissing all claims against defendants Lamb Hanson Lamb Appraisal Associates, Inc. and R. Scott Adams (hereinafter

collectively referred to as LHL). Appellants contend that (1) LHL owed them a duty of due care when it prepared a letter of opinion regarding the value of some real property for Cornerstone Investments, Inc. (Cornerstone); and (2) they were justified in relying on the letter of opinion when they decided to accept a deed of trust on Cornerstone's real property to secure the purchase of a separate piece of property owned by appellants. We affirm.

## I

The facts are not in dispute. Wayne and Suzanne Barnes wanted to buy some property and build a house. Suzanne's parents, Arthur and Avis Beech, agreed to quitclaim an interest in their property to Wayne and Suzanne so that all four became owners of the Beech residence. They then refinanced, borrowing $50,000 against the substantial equity in the Beech residence, to purchase a lot and begin construction of a house for Wayne and Suzanne.

Before the house was complete, appellants decided to sell the lot and the partially constructed house. After putting the property on the market, a realtor from Park Place Realty brought a purchase and sale agreement to the Barneses showing Cornerstone as the prospective purchaser.

Pursuant to the agreement, which the Barneses signed, Cornerstone agreed to purchase the Barneses' property. To secure the deed of trust and promissory note executed by Cornerstone in favor of the Barneses, the Barneses could choose to take a junior position in any one of several properties owned by Cornerstone.

Several weeks later, Cornerstone's agent contacted the Barnes and told them he "had an appraisal on a piece of commercial property [in Burien] that Cornerstone wished to use as the collateral for the note." The Barneses then went to the offices of Park Place Realty. According to Wayne Barnes, Cornerstone's agent explained to them that:

the building was vacant at the time but that it was going to be rehabilitated shortly and rented out, that there was

$275,000 of debt on the building at the present time, and that with our loan or note on there, the total indebtedness would be 317,000 against the value according to the appraisal as–is of 465,000. He said this would be a safe deal because of the difference in the indebtedness versus the value.

The agent showed them a letter of opinion which had been prepared by LHL at the request of Cornerstone and was dated September 1982, some 9 months earlier. He told them:

Here's an MAI appraisal. The building is worth $465,000 with about $275,000 of debt so there's plenty of equity to protect you.

The Barneses took the letter of opinion home with them and read it. Although the Barneses were aware that the appraised value of the Burien property assumed completion of the remodeling as specified in the letter of opinion, neither of them looked at the property, contacted LHL, or asked anyone about the property or the appraisal. Ultimately, the Barneses decided to accept a deed of trust on the Burien property, knowing that they would be in third position in the chain of title.

Cornerstone failed to make payments on the loan. Appellants were unsuccessful in their attempts to purchase the first lien position in order to sell the Burien property. The appellants then sued Cornerstone, Park Place Realty, and LHL. LHL moved for summary judgment, seeking a dismissal of appellants' claims against it. The trial court granted LHL's motion, and appellants filed this appeal.

## II

Appellants contend that the trial court erred in granting LHL's motion for summary judgment because the evidence raised a genuine issue of fact about whether LHL owed them a duty of due care in preparing its letter of opinion. Appellants rely on the affidavits of two experts which state that LHL should have known that the letter of opinion would be shown to third parties. LHL responds that it owed no duty to the Barneses and, in any event, the

Barneses could not justifiably rely on the alleged misrepresentation in LHL's letter of opinion.[1]

This court reviews the trial court's order granting summary judgment de novo. *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). An order granting summary judgment will be reversed if a genuine issue of material fact exists or if, as a matter of law, the moving party was not entitled to prevail. *Hartley,* 103 Wn.2d at 774.

No Washington case has yet defined to what extent appraisers owe third parties a duty of due care in the preparation and communication of their appraisals. However, in determining whether a plaintiff has stated a claim for negligent misrepresentation, Washington courts follow Restatement (Second) of Torts § 552 (1977). *Hoffer v. State,* 110 Wn.2d 415, 427–28, 755 P.2d 781 (1988); *Haberman v. WPPSS,* 109 Wn.2d 107, 161–62, 744 P.2d 1032 (1987), 750 P.2d 254, *appeal dismissed,* ___ U.S. ___, 102 L. Ed. 2d 15, 109 S. Ct. 35 (1988); *Transamerica Title Ins. Co. v. Johnson,* 103 Wn.2d 409, 415–16, 693 P.2d 697 (1985). Section 552 provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except . . . the liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of the limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

---

[1]Because the parties do not raise the issue, we will assume that LHL prepared the letter of opinion negligently.

(Italics ours.) Restatement (Second) of Torts § 552(1), (2) (1977). Thus, in order to maintain a cause of action for negligent misrepresentation, the plaintiffs must not only demonstrate that the defendant owes them a duty of due care, but must also establish that they *justifiably relied* on the negligent misrepresentation to their detriment.

We need not reach the issue of whether LHL owed appellants a duty of care because under these facts, we hold that as a matter of law, the appellants' reliance on LHL's letter of opinion was not justifiable.[2] Generally, whether a party justifiably relied is a question of fact. *See Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 233, 685 P.2d 1081 (1984). However, "when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law." *Hartley*, 103 Wn.2d at 775.

The letter of opinion contains numerous explicit disclaimers and conditions to its use. On page 1, the letter recites that LHL and Cornerstone agreed that it would be "something *less than a full and complete M.A.I. appraisal* . . . and that [the] letter [would be] an appraisal of the . . . property *in a limited sense only.*" (Italics ours.) On page 2, the letter of opinion warns that:

> Neither all nor any part of the contents of this report (especially any conclusions as to value . . .) shall be disseminated to the public through advertising media, public relations media, sales media or any other public

---

[2]The question of whether a plaintiff has *justifiably* relied on the defendant's representation is not totally separate from the issue of duty, however. To establish justifiable reliance, the plaintiff must show his reliance was reasonable under the circumstances surrounding the alleged misrepresentation. A defendant's duty extends as far as the plaintiff's reliance can be reasonably anticipated. The concept of justifiable reliance is therefore closely related to the scope of the defendant's duty. Thus, some courts have focused on the presence of disclaimers or limitations in the defendant's alleged misrepresentation and thereby determined the scope of the defendant's duty. *See, e.g., Pahre v. Auditor of State*, 422 N.W.2d 178, 181 (Iowa 1988) (the defendant did not owe a duty to the plaintiff where the title report specifically limited its use and coverage and there was no evidence that the title company knew or intended that some third party would see the report).

means of communication without the prior written consent and approval of the undersigned.

Finally, on page 5, under "UNDERLYING ASSUMPTIONS AND CONTINGENT CONDITIONS", the letter states that "[n]o right is given to publish or reproduce this report, or any part of its contents, without the consent of the maker."

The appellants have not created a triable issue of fact on the question of justifiable reliance on the letter of opinion. The "expert" affidavits submitted by appellants do not place any *facts* at issue. They merely assert, in pertinent part, that LHL should have known the Barneses would rely on the Letter of Opinion. Conclusory statements in affidavits are insufficient to defeat a motion for summary judgment. *Herron v. Tribune Pub'g Co.*, 108 Wn.2d 162, 170, 736 P.2d 249 (1987).

Thus, as a matter of law, LHL has established that appellants' reliance on the letter of opinion was not justified.

Affirmed.

SCHOLFIELD and WINSOR, JJ., concur.

Review denied at 113 Wn.2d 1012 (1989).