[No. 14459-0-II.   Division Two.   August 19, 1993.]

CONDOR ENTERPRISES, INC., *Appellant,* v. BOISE CASCADE CORPORATION, ET AL, *Respondents.*

*Gary M. Bullock* and *Bullock & Regier P.C.,* for appellant.

*Vivian Raits Solomon (Robert M. Meek* of counsel), for respondent Boise Cascade Corporation.

*Richard A. Saunders* and *Whitlock & Saunders (David A. Urman* of counsel), for respondent Norris, Beggs and Simpson.

MORGAN, J. — Condor Enterprises, Inc., appeals the dismissal, by summary judgment, of its negligent misrepresentation claim against Boise Cascade Corporation, a wood products firm, and Norris, Beggs, Simpson/Hart and Fuller, Inc., a commercial real estate firm. We affirm the trial court.

In 1987, Boise wanted to lease or sell lots 27, 28, and 29 at the Yearout Business Park in Vancouver, Washington. It retained Norris to market the lots. Eric Fuller was the salesman who did the actual work, and it is undisputed that he and Norris were acting as agents of Boise at all times material to the case.

In mid-1987, Condor needed a new location for its general office and interstate trucking/warehouse operations. Condor's president, Steve Goodin, became aware of Boise's lots and began negotiating with Fuller for a lease. It is undisputed that Goodin was acting as agent for Condor at all times material to the case.

Between June and December 15, 1987, Goodin and Fuller spoke on several occasions. Goodin emphasized that Condor was interested in the lots because it wanted to build loading docks that would face the existing roadway. On one occasion, Goodin asked Fuller whether there was any "zoning problem" that might hamper Condor's plans. According to Goodin, Fuller responded by saying:

> I don't know. Consolidated is over there, Orville Yearout has a trucking company there, Boise Cascade was there with trucks before, I guess not.

It is undisputed that Consolidated, Yearout and Boise were nearby companies with docks similar to that which Condor wanted to build.

On December 15, 1987, an offer to lease was prepared. It provided that Boise would grant Condor a $125,000 construction allowance for the dock improvements Condor was plan-

ning. Attached to it was a diagram which, according to Condor, incorrectly described the location of the docks Condor wanted to build. Goodin objected, and Fuller assured him the diagram was only a rough drawing intended to assist the parties in arriving at a lease price. Satisfied, Goodin took the offer to Condor's attorney, who recommended that Goodin obtain a title insurance policy which would "set forth the true legal owner and status of liens, taxes and other encumbrances against the property." Goodin did not order a title report, nor did he otherwise investigate encumbrances or restrictions affecting the property.

On March 30, 1988, Goodin was presented with a proposed final lease. The incorrect diagram was again attached. Goodin again objected, but Fuller told him not to worry because the lease allowed Condor to modify the diagram to suit its needs. Goodin thought Condor could build its docks in the desired location, so he signed the lease.

The lease allocated to Condor the responsibility for investigating restrictions on the lots. It provided that Condor was leasing "subject to all mortgages, underlying leases, and other underlying matters of record to which this Lease is or may be subject to or subordinate." It provided that Boise "ma[de] no warranty or representation as to the condition of the Premises or their fitness for use by the Leasee." It granted Condor an option to purchase, but provided that if Condor were to exercise the option, Boise could deliver title subject to "easements, restrictions, and reservations of record."

On April 21, 1988, Goodin first learned that the lots were subject to restrictive covenants that had been of record since 1977. The covenants provided, among other things, that "[t]here shall be no loading or unloading on the street side of any building . . .." Condor had wanted to build its docks facing south, toward the existing street, but due to the covenants it had to build its docks facing east. It also had to obtain variances and submit its construction plans to a private architectural review committee.

Condor sued. It alleged negligent misrepresentation, but not intentional misrepresentation or fraud. It alleged that

the defendants' negligent misrepresentation had proximately caused extensive damages.

Boise moved for summary judgment. It contended that as a matter of law, Condor could not have justifiably relied on Fuller's statements. It argued (1) that the casual way in which Fuller made his alleged misrepresentations should have indicated to Condor the need for additional investigation; (2) that the various sections of the lease made Condor responsible for additional investigation; (3) that Condor ignored its own attorney's prudent advice to obtain a title insurance policy; and (4) that if Condor had investigated, Condor would easily have discovered the restrictive covenants. The trial court granted summary judgment to Boise, and Condor appeals.

Restatement (Second) of Torts § 552 (1977) describes negligent misrepresentation. It states:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss *caused to them by their justifiable reliance upon the information,* if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(Italics ours.) Restatement § 552(1).

Restatement § 552A equates justifiable reliance with a lack of contributory negligence. It states:

> The recipient of a negligent misrepresentation is barred from recovery for pecuniary loss suffered in reliance upon it if he is negligent in so relying.

Additionally, the comment to section 552A states:

> *a.* The recipient of a fraudulent misrepresentation who justifiably relies upon it is not barred from recovery by his contributory negligence in doing so. (See § 545A). But when the misrepresentation is not fraudulent but only negligent, the action is founded solely upon negligence, and the ordinary rules as to negligence liability apply. Therefore the contributory negligence of the plaintiff in relying upon the misrepresentation will bar his recovery. This means that the plaintiff is held to the standard of care, knowledge, intelligence and judgment of a reasonable [person], even though he does not possess the qualities necessary to enable him to conform to that standard. (See § 464.)

The Washington cases follow the Restatement with respect to the elements of negligent misrepresentation. *Hines v. Data Line Sys., Inc.* 114 Wn.2d 127, 150, 787 P.2d 8 (1990); *Hoffer v. State,* 110 Wn.2d 415, 427-28, 755 P.2d 781 (1988), *aff'd on rehearing,* 113 Wn.2d 148, 776 P.2d 963 (1989); *Haberman v. WPPSS,* 109 Wn.2d 107, 161, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed,* 488 U.S. 805 (1988); *Transamerica Title Ins. Co. v. Johnson,* 103 Wn.2d 409, 415-16, 693 P.2d 697 (1985); *Barnes v. Cornerstone Invs., Inc.,* 54 Wn. App. 474, 477, 773 P.2d 884, *review denied,* 113 Wn.2d 1012 (1989). Thus, a plaintiff suing for negligent misrepresentation must prove that he or she justifiably relied upon information negligently supplied by a defendant. *J&J Food Ctrs., Inc. v. Selig,* 76 Wn.2d 304, 311, 456 P.2d 691 (1969); *Amtruck Factors v. International Forest Prods.,* 59 Wn. App. 8, 18, 795 P.2d 742 (1990), *review denied,* 116 Wn.2d 1003 (1991); *Controlled Atmosphere, Inc. v. Branom Instrument Co.,* 50 Wn. App. 343, 350-51, 748 P.2d 686 (1988). *See also Brown v. Underwriters at Lloyd's,* 53 Wn.2d 142, 150, 332 P.2d 228 (1958).

To date, the Washington cases also follow the Restatement view that justifiable reliance is equivalent to a lack of contributory negligence. As a result, contributory negligence is a complete bar to recovery, rather than a trigger that causes the fault of plaintiff and defendant to be compared and apportioned.[1] *Skagit State Bank v. Rasmussen,* 109 Wn.2d 377, 386, 745 P.2d 37 (1987); *Selig,* 76 Wn.2d at 311 ("measure of justifi-

---

[1] The Restatement commented on this effect in 1977:

> With respect to physical harms caused by negligence, the old rule that contributory negligence is a complete bar to liability based on negligence is yielding to a trend toward comparative negligence. It is debatable whether this development should affect liability for pecuniary harm as well. Precedents to date have not made this extension.

Restatement § 552A, comment *b.*

Since 1977, various courts have applied comparative negligence in negligent misrepresentation cases. *Robinson v. Poudre Vly. Fed. Credit Union,* 680 P.2d 241, 243 (Colo. Ct. App. 1984); *Florenzano v. Olson,* 387 N.W.2d 168, 175-76 (Minn. 1986); *Bottrell v. American Bank,* 237 Mont. 1, 20-21, 773 P.2d 694, 706 (1989); *Pastor v. Lafayette Bldg. Ass'n,* 567 So. 2d 793, 796-97 (La. Ct. App. 1990). As

cation is ordinary care"); *Controlled Atmosphere,* 50 Wn. App. at 350-51; *Dohrer v. Wakeman,* 14 Wn. App. 157, 164-65, 539 P.2d 91 (1975).[2] As the Supreme Court has stated:

> Our decision comports with current views respecting a party's own negligence in failing to ascertain the truth of the other party's representations. Whether a party's own negligence will be a defense to a claim for avoidance depends in part upon the nature of the conduct of the party making the representations. On the one hand, "courts will continue to move toward the doctrine that negligence in trusting in a misrepresentation will not excuse positive willful fraud . . .," 12 S. Williston, *Contracts* § 1515B, at 487 (3d ed. 1970), that is, a party's own negligence in the face of *positive, willful* fraud will not preclude avoidance by the party to whom the misrepresentation is made. On the other hand, where mere negligence on the part of the representing party is concerned, leading commentators have noted:
>
>> As negligence becomes an increasingly recognized basis of liability for misrepresentation the question whether contributory negligence is or should be a defense will become increasingly important. The decisions to date are unanimous in recognizing the defense and this accords with the view of commentators and the American Law Institute.

*Skagit,* 109 Wn.2d at 386 (quoting James & Gray, *Misrepresentation — Part I,* 37 Md. L. Rev. 286, 314 (1977)).

---

shown in the text, however, the Washington Supreme Court has not. *Skagit State Bank v. Rasmussen,* 109 Wn.2d 377, 745 P.2d 37 (1987).

It is possible to argue, on the basis of RCW 4.22.005, that the Washington Legislature has mandated comparative negligence in all cases involving fault, including those involving negligent misrepresentation. Sisk, *Interpretation of the Statutory Modification of Joint and Several Liability: Resisting the Deconstruction of Tort Reform,* 16 U. Puget Sound L. Rev. 1, 130 nn.560-68 (1992); *see also Lundberg v. All-Pure Chem. Co.,* 55 Wn. App. 181, 186, 777 P.2d 15 ("Legislature has determined that the comparative fault doctrine shall apply to all actions based on 'fault"), *review denied,* 113 Wn.2d 1030 (1989). However, neither party makes that argument here.

[2]Nothing in *Barnes v Cornerstone Invs., Inc.,* 54 Wn. App. 474, 773 P.2d 884, *review denied,* 113 Wn.2d 1012 (1989), is to the contrary. It does not reach the issue of an appraiser's duty of care, 54 Wn. App. at 478, but nevertheless holds that a lack of justifiable reliance bars recovery. 54 Wn. App. at 478-79. In commenting that a "defendant's duty extends as far as the plaintiff's reliance can be reasonably anticipated", 54 Wn. App. at 478 n.2, it neither discusses nor decides the propriety of defining a *defendant's* duty by a *plaintiff's* conduct.

■ Turning now to this case, we review the trial court's ruling de novo. *Hansen v. Friend,* 118 Wn.2d 476, 485, 824 P.2d 483 (1992); *Taggart v. State,* 118 Wn.2d 195, 199, 822 P.2d 243 (1992). We can affirm its judgment of dismissal only if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c); *Marincovich v. Tarabochia,* 114 Wn.2d 271, 274, 787 P.2d 562 (1990). In other words, we can affirm the judgment of dismissal "only if reasonable persons could reach only one conclusion from all the evidence." *Hansen v. Friend,* 118 Wn.2d at 485.

Viewed in the light most favorable to Condor, the record in this case shows (1) that Fuller said he *did not know* if there were any "zoning problems", but he *guessed* there were not; (2) that the lease allocated to Condor the responsibility for investigating encumbrances and restrictions; and (3) that before Condor signed the lease, it was told by its own attorney that it should order a title report or otherwise investigate encumbrances and restrictions. Given these facts, a rational trier of fact could not find that Condor exercised ordinary care in looking out for its own interests; rather, it would necessarily find that Condor negligently relied upon what Fuller said, whether or not Fuller was also negligent in speaking as he did. A rational trier of fact also could not find that Condor's contributory negligence was not a proximate cause of damage to its own pecuniary interests; rather, it would necessarily find that Condor's negligence was a proximate cause, for it cannot be disputed that even a simple investigation — for example, ordering a title report — would have brought the covenants to Condor's attention. Because Condor can recover only if it proves justifiable reliance, and because Washington case law presently equates justifiable reliance with lack of contributory negligence, Condor could not recover if this case went to trial. Therefore, the

trial court did not err by granting a summary judgment of dismissal.

Affirmed.

ALEXANDER, C.J., and SEINFELD, J., concur.