[No. 61666-3.   En Banc.   June 15, 1995.]

JOHN SCHAAF, Appellant, v. BLAINE HIGHFIELD,
ET AL., Respondents.

18

*Jack Cyr, Jr.*, for appellant.
*Tracy E. DiGiovanni*, for respondents.

TALMADGE, J. — The present case arises out of the sale of a home with a leaky roof in Bremerton. Petitioner Schaaf alleges that an appraiser (Olson) hired by the Veterans Administration (VA) conducted a negligent appraisal of the home and did not reveal the leaky roof to him. The trial court held that a VA appraiser owes no

duty to a prospective purchaser like Schaaf and granted summary judgment to Olson. This court granted direct review of the trial court's order on summary judgment dismissing Schaaf's complaint. We hold that a real estate appraiser owes a duty of care to third parties like Schaaf. Because Schaaf did not rely on Olson's appraisal, we affirm the trial court's order on summary judgment.

## ISSUES

1. Does a real estate appraiser owe a duty of care in the preparation of appraisals to third parties who are not in contractual privity with the appraiser?

2. If the answer to the first question is yes, is there an exception for a real estate appraiser whom the VA hires to perform an appraisal of a home?

## FACTS

On January 30, 1990, Plaintiff/Appellant John Schaaf purchased a home in Bremerton for $100,000 with a loan guaranteed by the VA. Clerk's Papers, at 2, 4. Schaaf alleges that in September 1990, after a major rainstorm, he discovered water in his basement. He alleges that a leaky roof caused the water to accumulate there, and he paid $2,326.18 to replace a ruined carpet in the recreation room. Clerk's Papers, at 4. From January 1991 until August 1991, Schaaf was on duty in the Persian Gulf during Operation Desert Storm. When he returned, he found the leaking roof leaving "heavy water stains down the walls of the hallway entrance and ruining the carpet in the stairway landing and making the new carpet in the recreation room smell badly". Clerk's Papers, at 4-5. Schaaf did not seek recovery for these damages (Clerk's Papers, at 8), but instead sought damages of $2,564 for the reroofing of his house, and $11,500 for the lost value of the

house on resale due to the defective roof. Clerk's Papers, at 8.[1]

Schaaf filed a verified complaint on December 18, 1992, in the Kitsap County Superior Court, suing the selling agent, the brokerage firm, the brokers, and Respondent Paul Olson, the VA-hired appraiser who had appraised the house prior to the VA's approval of the loan. Clerk's Papers, at 2. He contended that Olson's appraisal was negligent because it failed to note the defective roof. Clerk's Papers, at 7. Only the claims against Olson have survived.[2]

On November 17, 1993, Olson filed a motion for summary judgment asking the court to dismiss the complaint as to him. Clerk's Papers, at 19. The trial court granted the motion by a letter dated January 3, 1994. In that letter, the trial court stated, "The authorities, particularly *Gay v. Broder*, 167 Cal. Reptr. [sic] 123 (1980), support Defendant Olson's position that he owed no duty to Plaintiff". Clerk's Papers, at 81. On January 19, 1994, Schaaf filed a motion for reconsideration. Clerk's Papers, at 82. On February 18, 1994, the trial court entered its order of summary judgment, and subsequently denied the motion for reconsideration on April 4, 1994. Clerk's Papers, at 89, 105. Schaaf filed a notice of appeal directly to this court on May 3, 1994, Clerk's Papers, at 92, and we accepted direct review. RAP 4.2.

ANALYSIS

A

Standard for Review of Summary Judgment

The starting point for analysis of the trial court's

---

[1]The basis for Schaaf's claim that he lost value on resale of the home is unclear, as he purchased the home for $100,000 and sold it for $117,500. Clerk's Papers, at 34.

[2]Schaaf's complaint against the remaining Defendants proceeded to an arbitration hearing. The arbitrator found for the Defendants and awarded costs and attorney fees in their favor. Br. of Resp't, at 3-4.

decision is a consideration of the standard of review. In analyzing orders on summary judgment, this court has traditionally noted that a moving party under CR 56 bears the initial burden of demonstrating an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Thereafter, the nonmoving party must set forth specific facts evidencing a genuine issue of material fact for trial. In reviewing the evidence, the trial court must consider the evidence and the reasonable inferences therefrom in a light most favorable to the nonmoving party. This court reviews the facts and law with respect to summary judgment de novo. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

B

Real Estate Appraiser's Duty of Care to Third Parties

Plainly, a real estate appraiser has a duty of care to the person or entity who retained the appraiser. That duty may arise from law if the appraiser is an agent;[3] it may arise from contract if the appraiser is an independent contractor.[4] We analyze an appraiser's duty of care to third parties under the framework of the law of negligent misrepresentation.[5]

 "Whether a defendant owes a duty of care to the

---

[3]*See, e.g., Monty v. Peterson*, 85 Wn.2d 956, 958, 540 P.2d 1377 (1975) ("Agents have a duty to exercise care in dealing with their principals and are liable for any damage caused by a breach of that duty").

[4]A different set of duties arises if the appraiser is an employee. We say nothing in this case with respect to an appraiser's duties to third parties if the appraiser is an employee of the person or entity who orders the appraisal.

[5]Neither party offered the court a third-party beneficiary analysis of liability. We believe such an analysis would fail in any event under the facts of this case. In *Postlewait Constr., Inc. v. Great Am. Ins. Cos.*, 106 Wn.2d 96, 99-101, 720 P.2d 805 (1986), this court said:

In *Lonsdale v. Chesterfield*, 99 Wn.2d 353, 361, 662 P.2d 385 (1983), quoting *Burke & Thomas, Inc. v. International Org. of Masters*, 92 Wn.2d 762, 767, 600 P.2d 1282 (1979), we held that

complaining party is a question of law". *Hansen v. Friend,* 118 Wn.2d 476, 479, 824 P.2d 483 (1992). Since 1985, Washington has recognized a cause of action for negligent misrepresentation pursuant to RESTATEMENT (SECOND) OF TORTS § 552 (1977).[6] This court in *Transamerica Title Ins. Co. v. Johnson,* 103 Wn.2d 409, 413, 693 P.2d 697 (1985) cited § 552 with approval, although it did not directly adopt it. Section 552 reads, in pertinent part:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Two Court of Appeals decisions considered but did not resolve the question of whether an appraiser owes a duty

---

> [t]he creation of a third-party beneficiary contract requires that the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract.

Thus, both contracting parties must intend that a third party beneficiary contract can be created. Furthermore, the test of intent is an objective one; the key is not whether the contracting parties had an altruistic motive or desire to benefit the third party, but rather, "whether performance under the contract would necessarily and directly benefit" that party. The contracting parties' intent is determined by construing the terms of the contract as a whole, in light of the circumstances under which it is made.

(Footnotes omitted). On this record, there is no indication whatsoever that the VA and Olson assumed a direct obligation to Schaaf and considered Schaaf a direct beneficiary of the appraisal.

[6]Negligent misrepresentation, as a species of fraud, has been a cause of action in Washington at least since 1932. *See, e.g., Lou v. Bethany Lutheran Church,* 168 Wash. 595, 13 P.2d 20 (1932).

of care to third persons. In *Barnes v. Cornerstone Invs., Inc.*, 54 Wn. App. 474, 773 P.2d 884, *review denied,* 113 Wn.2d 1012 (1989), the court squarely faced the question of whether an appraiser owes a duty of care to a third party. Citing the RESTATEMENT (SECOND) OF TORTS § 552 (1977) and Washington case law on negligent misrepresentation, and noting that "[n]o Washington case has yet defined to what extent appraisers owe third parties a duty of due care in the preparation and communication of their appraisals", *Barnes*, at 477, the court nevertheless did not decide the question. Rather, it held that even if there was a duty of care the appraiser had breached, the plaintiff had not justifiably relied on the appraisal report, precluding liability. *Barnes*, at 477-78. In *Rubin v. Century 21 Peterman Real Estate, Inc.*, 71 Wn. App. 189, 857 P.2d 1059 (1993), pursuant to a request by the parties, the court expressly declined to rule on the liability of an appraiser to third parties. *Rubin*, at 192 n.6.

We conclude that § 552 applies to a real estate appraiser like Olson, who "in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions". The crucial consideration here is to what extent this duty of care extends to third parties not in privity with the appraiser. After *Transamerica*, this court decided several cases that serve to define and limit the duty of care. In *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 744 P.2d 1032, *modified,* 750 P.2d 254 (1987), *appeal dismissed sub nom. Wood Dawson Smith & Hellman v. Haberman,* 488 U.S. 805 (1988), this court for the first time extensively discussed § 552. At issue was the trial court's CR 12(b)(6) dismissal of bondholder claims for alleged negligent misrepresentations of fact against various professionals involved in the construction and financing of the Washington Public Power Supply System (WPPSS) nuclear power plants. The bondholders had alleged they suffered pecuniary loss in reliance on the information from the defendants. Relying on § 552, the court set forth three circum-

stances in which there would be liability for negligent misrepresentations:

> Liability for negligent misrepresentations is thus limited to cases where (1) the defendant has knowledge of the specific injured party's reliance; or (2) the plaintiff is a member of a group that the defendant seeks to influence; or (3) the defendant has special reason to know that some member of a limited group will rely on the information.

*Haberman*, at 162-63.

The *Haberman* dissent argued that the majority had applied § 552 too broadly, including within its ambit "a limitless and unrestricted class of investors". *Haberman*, at 188 (Pearson, C.J., dissenting). Citing § 552(2)(a), the dissent pointed out that "liability under section 552 is limited to loss suffered 'by the person or one of a *limited group* of persons *for whose benefit and guidance he intends to supply* the information or knows that the recipient intends to supply it' ". *Haberman*, at 188 (Pearson, C.J., dissenting). Although the *Haberman* court did not attempt to specify what would constitute the "limited group" in this case, the court clearly intended to limit the plaintiff class in actions under § 552. The policy reason for attempting to limit the class of potential plaintiffs claiming negligent misrepresentation is "deference to legitimate fears of indeterminate liability to third persons". *Haberman*, at 162. Mr. Justice Cardozo, in an oft-cited formulation of the problem of limiting liability with respect to accountants, said:

> If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class.

*Ultramares Corp. v. Touche*, 255 N.Y. 170, 179, 174 N.E. 441, 444 (1931). In *Hoffer v. State*, 110 Wn.2d 415, 755 P.2d 781 (1988) (*Hoffer* I), this court once again looked at a negligent misrepresentation claim by WPPSS bondhold-

ers. This time, the bondholders brought suit against the Washington State Auditor for alleged misrepresentations in a letter about his examination of the operations of WPPSS. The trial court dismissed the action for failure to state a claim. Referring to § 552, this court had no trouble in concluding that the plaintiffs stated a claim. The bondholders argued that the Auditor was acting within his employment; that his letter might have been interpreted to contain false information; that they relied on the letter; that the Auditor did not exercise reasonable care in obtaining the information in the letter; and that they suffered pecuniary loss as a result. The court concluded that the plaintiff class was properly limited to potential investors, and that the Auditor "wrote the letter knowing that the Supply System intended for it to reach investors who were deciding whether to purchase bonds". *Hoffer*, at 428-29. Thus, *Hoffer* I reinforces the *Haberman* determination that a cause of action for negligent misrepresentation can extend to those not in privity with the tortfeasor, if the plaintiff class is limited.

This court expanded on this point after granting the State's motion for reconsideration on the negligent misrepresentation claim. In *Hoffer v. State*, 113 Wn.2d 148, 776 P.2d 963 (1989) (*Hoffer* II), we explained why the group of potential investors is a limited group within the ambit of § 552:

> We also decline to reverse our holding on the negligent misrepresentation issue. We originally held that the bondholders had stated a claim upon which relief could be granted under section 552 of the Restatement (Second) of Torts (1977). *Hoffer*, at 427-29. One of the requirements for recovery under that section is that the loss be suffered by the "person or one of the *limited group* of persons for whose benefit and guidance [the defendant] intends to supply the information or knows that the recipient intends to supply it". (Italics ours.) Restatement (Second) of Torts § 552(2)(a) (1977). The State argues that the information at issue here was intended to be transmitted to the general investing public, a group that it contends is not "limited". We need not decide whether the general investing public as a whole qualifies under this stan-

dard, however, because certain subgroups of the bondholders might have been singled out to receive the letter. *See Haberman*, at 163-64.

*Hoffer* II, at 152-53. Although the *Hoffer* II court's allusion to "certain sub-groups of the bondholders [who] might have been singled out to receive the letter" is not entirely clear, what is clear is that once again the court reiterated the requirement that the plaintiff class in a § 552 action have some limitation.

In *Hines v. Data Lines Sys., Inc.*, 114 Wn.2d 127, 787 P.2d 8 (1990), this court considered a claim of negligent misrepresentation against a law firm involved in the issuance of securities. We held that the evidence before the trial court did not establish misrepresentation. Further, we held that there was no evidence to indicate that the law firm "intended this information to influence or reach a particular class distinct from the general investing public who would have access to the information and rely upon it". *Hines*, at 151. Thus, this court now made it clear that the "general investing public" was too expansive for the plaintiff class in a negligent misrepresentation claim, and that the plaintiffs would have to constitute a distinct and smaller class for whom the information was intended.

█ In summary, under § 552, lack of privity is no defense to a claim of negligent misrepresentation. In Washington, however, only those in a limited class may advance such claims. Schaaf is a member of that limited class. He was a prospective home buyer who had applied to the VA for a loan guaranty. The VA hired Olson to do the appraisal solely because of Schaaf's application. Schaaf is, therefore, the most proximal third party there will ever be to Olson's appraisal. It is possible that subsequent potential purchasers of the real estate, or others with some interest in it, will have access to Olson's appraisal, and rely on it. These people will all be more distal to the appraisal than Schaaf, however. Thus, if Olson's liability does not extend at least to Schaaf's claim, no other third party will ever have a cause of action against the appraiser.

We conclude that a third party in Washington may state a claim for negligent misrepresentation against a real estate appraiser pursuant to RESTATEMENT (SECOND) OF TORTS § 552. The liability of a real estate appraiser in these circumstances extends only to those involved in the transaction that triggered the appraisal report, including, but not necessarily limited to, the buyer and the seller. We leave defining the precise scope of the appraiser's duty of care to a factual determination by a future trial court.[7] We hold that Schaaf stated a cause of action, pursuant to § 552, against Olson for allegedly rendering a negligent appraisal.

## C
### Olson's Status as a VA Appraiser

The next point of our analysis is whether the status of Olson as an appraiser hired by the VA somehow negates his common-law duty of care. Olson relies heavily on *Gay v. Broder*, 109 Cal. App. 3d 66, 167 Cal. Rptr. 123 (1980), for the proposition that an appraiser working under VA auspices owes duties only to the VA and not to a prospective borrower like Schaaf. Br. of Resp't, at 5-8. The California appellate court in *Gay* considered the case of a veteran who had been financially harmed by a VA appraiser's negligent appraisal. After a protracted analysis of the legislative history of the VA guaranteed loan program, the court concluded:

> In light of our conclusion that the present provisions of 38 U.S.C. section 1810(b)(5)[8] are designed to protect the Veterans Administration and not the veteran, the duty of the

---

[7]"As in most professional relationships, the appraiser's exact performance is left unstated; the client is justified in expecting an appraisal that meets professional standards. See, for example, AIREA's [American Institute of Real Estate Appraisers'] Professional Ethics and Standards (1985). Failure to meet these standards may be a source of both breach of contract and negligence liability." Theresa H. Waller & Neil G. Waller, Real Estate Appraisal: The Legal Liability, 18 Real Estate L.J. 233, 244 n.34 (1990).

[8]Now designated 38 U.S.C. § 3710(b)(5) (Supp. IV 1992) pursuant to Pub. L. No. 102-83 § 5(c)(1), 105 Stat. 406 (1991).

designated fee appraiser is to submit to the Administration an appraisal of value consonant with what he believes is the actual reasonable value of the property. Concern with the possibility of claims against him for refusing to set a value as high as the loan desired by the applicant veteran would deter the appraiser from reporting to the Administration his true opinion as to value and tend to cause him to breach his duty to the federal government. The policy considerations against the imposition of liability in the instant case are manifest.

*Gay*, at 72, *cited in* Br. of Resp't, at 5-6.

■■ The analysis of the *Gay* court is not persuasive. A VA appraiser is no different from a non-VA appraiser whom a lender hires to perform an appraisal in conjunction with a conventional loan application. Just as the function of a VA appraiser is to protect the VA from guaranteeing improvident loans, so the function of a non-VA appraiser is to protect the conventional lender from making improvident loans. The legislative history of the VA loan guaranty statute may indicate that the VA appraiser works for the benefit of the VA. It is obvious, however, that an appraiser owes duties to anyone who hires him or her. In the case of the VA appraiser, as well as in the case of the non-VA appraiser, there is no compelling reason to conclude that, just because the appraiser owes duties to the principal, the appraiser's common-law duties to others disappear. Rather, we agree with the Court of Appeals in *Rubin v. Century 21 Peterman Real Estate, Inc.*, 71 Wn. App. 189, 193, 857 P.2d 1059 (1993), which held that an FHA appraiser was liable to the purchaser of a home for a negligent appraisal, stating that the appraiser's duty of care was defined by state common law and was not owed exclusively to the FHA.[9]

Further, federal laws or regulations do not preempt any state common-law duties VA appraisers may have:

Federal law preempts state law when Congress intends to oc-

---

[9]Likewise, the *Gay* court's concern that exposure to claims by aggrieved borrowers could skew the VA appraiser's report applies with equal force to the non-VA appraiser.

cupy a given field, when state law directly conflicts with federal law, or when state law would hinder accomplishment of the full purposes and objectives of the federal law. . . . Federal regulations have the same preemptive effect as federal statutes.

*Berger v. Personal Prods., Inc.*, 115 Wn.2d 267, 270, 797 P.2d 1148 (1990), *cert. denied*, 499 U.S. 961 (1961). *See also Inlandboatmen's Union of the Pac. v. Department of Transp.*, 119 Wn.2d 697, 836 P.2d 823 (1992). 38 U.S.C. § 3710(b)(5) states the requirement for an appraisal in connection with a VA loan. 38 U.S.C. § 3731 describes the appraisal process and the selection of appraisers. 38 C.F.R. pt. 36 sets forth the regulations governing the loan guaranty program. Using this court's preemption analysis, we conclude that the Congress did not preempt actions against VA appraisers. *Nowhere* in these statutes or regulations is there any indication that Congress wished expressly or impliedly to preempt the field regarding common-law duties of VA appraisers. The federal statutes do not conflict with state law; nor would liability of VA appraisers to borrowers hinder the purposes of federal law.[10] In summary, the special circumstances of this case—an allegedly negligent appraisal under the auspices of the VA loan guaranty program—do not require a different result with respect to the duty of care appraisers owe to third parties.[11] The policy objectives of the RESTATEMENT (SECOND) OF TORTS § 552 are compelling.

---

[10]If appraisers are liable to borrowers in non-VA loan transactions, then holding them to the same standard of care when they are appraising for the VA should not work any harm to their activities or to the purposes of the VA loan guaranty program.

[11]The following courts have held appraisers liable to third parties not in contractual privity: *Tackling v. Shinerman*, 42 Conn. Supp. 517, 630 A.2d 1381 (1993); *Larsen v. United Fed. Sav. & Loan*, 300 N.W.2d 281 (Iowa 1981); *Perpetual Fed. Sav. & Loan Ass'n v. Porter & Peck, Inc.*, 80 Ohio App. 3d 569, 609 N.E.2d 1324 (1992); *Stotlar v. Hester*, 92 N.M. 26, 582 P.2d 403 (Ct. App.), *cert. denied*, 92 N.M. 180 (1978); *Alva v. Cloninger*, 51 N.C. App. 602, 277 S.E.2d 535 (1981); *First Fed. Sav. Bank v. Knauss*, 296 S.C. 136, 370 S.E.2d 906 (Ct. App.

## D
## Summary Judgment Was Proper

■ Applying the foregoing principles, as this court must do in reviewing de novo the trial court's order on summary judgment, it is plain that the trial court was correct in granting summary judgment to Olson.[12] In order to establish his claim under § 552, Schaaf had to show that he justifiably relied upon the allegedly negligent misrepresentation by Olson. *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 181, 876 P.2d 435 (1994). Ordinarily, whether reliance was justifiable is a question of fact, but when reasonable minds could reach but one conclusion, summary judgment is appropriate. *Havens*, at 181. It appears that Schaaf did not rely on the appraisal report at all.

In his verified complaint,[13] Schaaf stated that he "offered the lower price because the house was 16 years old and [he] thought the house would need a new roof". Clerk's Papers, at 3. As Schaaf already knew *before* he bought the house that it needed a new roof, he simply cannot blame the appraiser for failing to report the roof needed repair.

Even more compelling evidence that Schaaf did not rely on the appraiser's report is his admission in a letter that he did not even see the appraisal report until some time after April 1991, more than a year *after* he bought the

1988); *Rogers v. Thomas*, 1994 Tenn. App. LEXIS, at *291 (Tenn. Ct. App. 1994); *Costa v. Neimon*, 123 Wis. 2d 410, 366 N.W.2d 896 (Ct. App. 1985).

The following courts have held that appraisers are not liable to third parties not in contractual privity: *Gay v. Broder*, 109 Cal. App. 3d 66, 167 Cal. Rptr. 123 (1980); *Emmons v. Brown*, 600 N.E.2d 133 (Ind. Ct. App. 1992) (Indiana does not recognize the tort of negligent misrepresentation in the context of rendering professional opinions); *Baker v. Surman*, 361 N.W.2d 108 (Minn. Ct. App. 1985).

[12]The essence of Schaaf's complaint appeared to be that Olson, as a real estate appraiser, virtually warranted the quality of the roof on the house. Obviously, Olson was not a structural engineer, but provided only his best professional estimate of the value of the home. It is not clear that Olson's valuation of the house was flawed at all.

[13]Schaaf verified his complaint as follows: "I, John Schaaf, have carefully reviewed this 7 page Complaint and acknowledge that it is accurate, complete and true to the best of my personal knowledge." His signature appears immediately beneath this statement. Clerk's Papers, at 8.

house. Clerk's Papers, at 70. Thus, he could not possibly have directly relied on the report at the time of purchase. *Accord Hughes v. Holt*, 140 Vt. 38, 40-41, 435 A.2d 687, 688-89 (1981) (no reliance where plaintiff did not see appraisal report before closing); *but see Costa v. Neimon*, 123 Wis. 2d 410, 416, 366 N.W.2d 896, 900 (Ct. App. 1985) (reliance on appraisal report inferred from VA's acceptance of the loan amount). There was no direct contact between Schaaf and Olson other than the report. Clerk's Papers, at 34. While a third party may state a cause of action against a real estate appraiser in the appropriate factual setting, Schaaf failed to prove a case as he did not rely on Olson's appraisal report. We affirm the trial court's summary judgment.

DURHAM, C.J., and JOHNSON, DOLLIVER, MADSEN, SMITH, ALEXANDER, and GUY, JJ., concur.