**In re DALEY'S DUMP TRUCK SERVICES, INC., Debtor.**

**WALTER & SCI CONSTRUCTION (USA), INC., Appellee,**

v.

**DALEY'S DUMP TRUCK SERVICES, INC., a Washington corporation, Appellant.**

**DALEY'S DUMP TRUCK SERVICES, INC., Appellant,**

v.

**WALTER & SCI CONSTRUCTION (USA), Appellee.**

**Nos. 95–35950, 96–35093.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1996.

Decided Feb. 27, 1997.

As Amended April 8, 1997.

---

Peter B. Camp, Camp von Kallenbach, Seattle, WA, for the appellants.

Glenn R. Nelson, Oles, Morrison & Rinker, Seattle, WA, for the appellees.

Before: WRIGHT, BRUNETTI, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We examine the interplay of claims between a general contractor on the Downtown Seattle Transit Project and one of its subcontractors which filed for bankruptcy under Chapter 11.

I

Daley's Dump Truck Services, Inc. ("Daley's") was a subcontractor to SCI Contractors, Inc. ("SCI") on the Pine Street Tunnel/Westlake portion of the Downtown Seattle Transit Project for the Municipality of Metropolitan Seattle ("Metro") in 1987. The job became significantly more costly to perform than originally contemplated, and in the course of performance Daley's became insolvent. In December 1988, Daley's filed a Chapter 11 bankruptcy petition.

In April 1990, Daley's filed suit against SCI seeking $1.9 million in damages for losses sustained during performance of the contract, and SCI counterclaimed for $1.5 million. Subsequently, the parties settled the litigation and entered into a claims prosecution agreement releasing claims against each other and establishing a procedure for jointly asserting "pass through" claims against Metro.[1]

The claims prosecution agreement gave broad powers to SCI to settle Daley's claims with Metro, but included a limitation requiring SCI to seek prior approval from Daley's or the bankruptcy court of any proposed settlement with Metro for less than $1 million. The agreement also specified the method of distributing any funds recovered from Metro between Daley's and SCI.

In June 1991, SCI settled Daley's claims with Metro for $700,000 without first seeking approval from Daley's or the bankruptcy court. SCI then filed a petition for approval

---

**1.** Under Washington law, subcontractors may sue only the general contractor, and not the government owner, for losses suffered in the course of performing public-works contracts. The general contractor may, however, avoid liability by asserting a "pass through" claim on behalf of the subcontractor to recover losses caused by the government. *See* Wash. Rev.Code §§ 39.04.010, 39.08.010, 60.28.010.

with the bankruptcy court seeking approval of the SCI–Metro settlement. The bankruptcy court refused to approve the settlement which it found to be not in the best interest of Daley's creditors. The district court affirmed, and SCI appealed to the Ninth Circuit. In a memorandum disposition, we reversed and remanded to the bankruptcy court with instructions to consider the reasonableness of the settlement using the factors laid out in *Woodson v. Fireman's Fund Insurance,* 839 F.2d 610 (9th Cir.1988). *In re Daley's Dump Truck Services, Inc.,* 19 F.3d 26 (9th Cir.1994) (unpublished disposition).

In separate litigation, filed in January of 1992, Daley's brought an adversarial action against SCI in district court seeking rescission of the claims prosecution agreement under several legal theories. Daley's 1992 suit was stayed pending the outcome of SCI's 1991 settlement approval petition litigation.

On remand of the approval petition litigation, the bankruptcy court again refused to approve the settlement, this time on the ground of mootness. It held that any consideration of the settlement would be an advisory opinion because SCI had released all claims against Metro, and was presenting a fait accompli to the court. Even if the court found that the settlement was unreasonable, it reasoned, there would be no relief that could be granted. It nevertheless made findings under the *Woodson* test, concluding that the SCI–Metro settlement was reasonable.

SCI appealed from this second denial of approval by the Bankruptcy Court to the district court, which reversed and found that both parties still had legally cognizable interests in approval of the settlement which precluded a finding of mootness. The district court then adopted the *Woodson* findings made by the bankruptcy court and approved the SCI–Metro settlement as reasonable. Daley's filed a timely appeal.

The district court then took up Daley's 1992 suit seeking rescission of the claims prosecution agreement. SCI moved for summary judgment on the ground that, since the SCI–Metro settlement had been approved as reasonable, Daley's could not show damages.

The district court granted SCI's motion. It held that, even assuming that SCI had misled Daley's in the negotiations over the claims prosecution agreement, (1) Daley's could not have justifiably relied upon any misstatements made by SCI and (2) Daley's had no damages to assert because the SCI–Metro settlement had been approved as reasonable. Once again, Daley's timely appealed, and the two appeals, the 1991 approval petition litigation and the 1992 rescission litigation, are consolidated here.

## II

We first examine the grant of summary judgment in the contract rescission action.

Daley's argues that the district court erred to the extent it based its order on a finding that Daley's could not have justifiably relied on SCI's misstatements for two reasons: (1) justifiable reliance is an element of only one of the five legal theories supporting rescission briefed by Daley's; and (2) justifiable reliance is normally a factual question to be determined by the jury unless no reasonable person could possibly find otherwise.

■ Daley's argument is persuasive. First, justifiable reliance relates only to the negligent misrepresentation claim, *Havens v. C & D Plastics, Inc.,* 124 Wash.2d 158, 876 P.2d 435, 447 (1994) (en banc) and justifiable reliance is normally a factual question for the jury, *Schaaf v. Highfield,* 127 Wash.2d 17, 896 P.2d 665, 672 (1995) (en banc). Furthermore, four separate legal theories supporting rescission and briefed by Daley's do not include the element of justifiable reliance under Washington law: intentional misrepresentation; material breach; mistake; and breach of fiduciary duties. Therefore, summary judgment was not warranted on these additional contentions; there are genuine issues of material fact under these legal theories.

■ Daley's also argues that the district court erred in holding that Daley's could not demonstrate damages because it mistakenly assumed that damages were limited by the approved SCI–Metro settlement. However, Daley's argues that if rescission is granted then it would be free to assert the claims

against SCI which were released in the claims prosecution agreement. Such damages would not be limited by the SCI–Metro settlement of the pass-through claims because they include non-pass-through claims against SCI, not Metro. Daley's presented evidence that these damages are between $1.5 and $2.3 million. SCI disputes these figures and Daley's reasoning. Therefore, a genuine issue of material fact exists as to damages, which precludes summary judgment, and requires reversal.

### III

We turn now to the 1991 settlement approval petition, which the district court granted, holding the SCI–Metro settlement to be reasonable and not moot.

■ Daley's argues that the bankruptcy court correctly held that settlement approval would be moot because SCI released all claims against Metro in agreeing to the settlement. It argues, therefore, that the claims no longer existed by the time SCI sought court approval, and no ruling by the court could resurrect them or require that SCI prosecute them against Metro. In support, Daley's cites to a case where a court refused to rule upon the reasonableness of a contract settlement where the contract was no longer in effect. *I.A.T.S.E. Group for Union Equality v. Association of Motion Picture and Television Producers, Inc.,* 16 Fair Empl.Prac.Cas. (BNA) 1186 (C.D.Cal. 1976).

However, SCI argues that the issue of the settlement's reasonableness was not moot because disapproval of the settlement would expose SCI to a suit for damages by Daley's. Those damages would be based on the difference between the settlement as entered into between SCI and Metro and the amount the court determined could have been recovered had the claims been litigated instead of settled. *See Powell v. McCormack,* 395 U.S. 486, 495–500, 89 S.Ct. 1944, 1952–53, 23 L.Ed.2d 491 (1969) (holding that case is not moot where a decision can affect plaintiff's right to monetary relief).

We are persuaded by SCI's argument. Because a decision on the settlement's rea-

sonableness could create exposure to a suit for damages against SCI, we affirm the district court's determination that the settlement approval issue was not moot. We also affirm the district court's determination that the settlement of the pass-through claims between SCI and Metro was reasonable under the *Woodson* factors, based on the bankruptcy court's factual findings.

### IV

We reverse the district court's order of summary judgment in Daley's action for rescission of the contract, and affirm the district court's approval of the SCI–Metro settlement.

However, we remand the settlement agreement approval issue to the district court for disposition in the event that reconsideration of the settlement's validity becomes necessary in light of the outcome of the contract rescission suit. If Daley's is ultimately successful in its suit for rescission, then the district court will have to determine the status of the agreement reached between SCI and Metro under that contract.

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion. Each side to bear its own costs.