# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOHN M. KALAHAR and PEGGY L. KALAHAR, husband and wife, | ) ) ) | No. 72635-8-I |
| Appellants, | ) ) ) | DIVISION ONE |
| v. | ) ) ) | UNPUBLISHED OPINION |
| ALCOA, INC., | ) ) ) | |
| Respondents | ) ) ) | |
| CERTAINTEED CORPORATION; HANSON PERMANENTE CEMENT, INC., f/k/a KAISER CEMENT CORPORATION; KAISER GYPSUM COMPANY, INC.; PFIZER INC.; RILEY POWER, INC., f/k/a RILEY STOKER CORP., f/k/a BABCOCK BORSIG POWER, INC., f/k/a D.B. RILEY, INC.; SABERHAGEN HOLDINGS, INC.; and UNION CARBIDE CORPORATION, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | FILED: August 24, 2015 |

APPELWICK, J. — The Kalahars appeal the summary judgment dismissal of their personal injury action against Alcoa. Kalahar and his wife sued Alcoa claiming that Kalahar's mesothelioma was caused by asbestos exposure during his employment at an Alcoa plant. Because RCW 51.04.010 provides employers immunity from civil suits by workers for injuries on the job, the Kalahars brought suit under the intentional injury exception outlined in RCW 51.24.020. The trial court dismissed the Kalahars' action

reasoning that Alcoa did not have actual knowledge that injury was certain to occur as required by the intentional injury exception. We affirm.

FACTS

John Kalahar worked various jobs at the Alcoa "Wenatchee Works" plant in Wenatchee, Washington from March 1963 to September 1963 and from March 1964 to April 1971. Wenatchee Works was an aluminum smelter where raw alumina ore was converted into molten aluminum. At the plant, alumina ore was placed into large pots and high levels of electricity were used to separate the aluminum molecules from the alumina ore.

Kalahar first worked as a trainee in "potrooms" at the plant. A separate team of "potliners" would periodically "dig out" spent pots and reline them while Kalahar was nearby. There was asbestos in the materials used to line the pots where the molten aluminum was created. Kalahar also worked near the machine shop around machinists who would cut Marinite boards creating dust with asbestos particles. Kalahar's position in the machine shop as a sheet metal apprentice required him to cut asbestos-containing cloth himself. As a result of working around the dust from the Marinite in the machine shop, Kalahar would often sneeze and blow his nose. When he worked as a sheet metal apprentice he would get an itchy sensation in his face. At the time Kalahar worked at the plant, Alcoa was aware of the health risks of asbestos exposure and that exposure could result in asbestosis and lung cancer.

In January 2014, Kalahar was diagnosed with mesothelioma, a cancer primarily associated with asbestos exposure. Kalahar and his wife filed a complaint against Alcoa for personal injuries. On September 25, 2014, Alcoa filed a motion for summary

judgment. It asserted that the Kalahars' claims against it are barred by the exclusive remedy of the Washington Industrial Insurance Act (WIIA)—RCW 51.04.010. Alcoa asserted that the Kalahars' claims were barred unless they could demonstrate Kalahar's mesothelioma was caused by the deliberate intention of Alcoa to produce such injury—a narrow exception to RCW 51.04.010 outlined in RCW 51.24.020. It argued that under Washington case law, the Kalahars had to provide evidence that (1) Alcoa had actual knowledge Kalahar was certain to develop mesothelioma and (2) that it willfully disregarded that knowledge. In arguing that the Kalahars could not provide evidence satisfying the deliberate intention exception, Alcoa relied heavily on the Kalahars' expert's deposition testimony that asbestos exposure is never certain to cause mesothelioma or any injury.

The trial court agreed with Alcoa and concluded that under the Washington Supreme Court's recent decision in Walston v. Boeing Co., 181 Wn.2d 391, 334 P.3d 519 (2014), the Kalahars failed to satisfy the deliberate intention exception. Consequently, it granted Alcoa's motion for summary judgment. The Kalahars appeal.

## DISCUSSION

This court reviews summary judgment orders de novo. Hadley v. Maxwell, 144 Wn.2d 306, 310-11, 27 P.3d 600 (2001). Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Peterson v. Groves, 111 Wn. App. 306, 310, 44 P.3d 894 (2002). When considering the evidence, the court draws reasonable inferences in the light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995).

3

The WIIA was the product of a "grand compromise" in 1911. Birklid v. Boeing Co., 127 Wn.2d 853, 859, 904 P.2d 278 (1995). Injured workers were given a swift, no-fault compensation system for injuries on the job and employers were given immunity from civil suits by workers. Id. But, employers who deliberately injured their employees would not enjoy the immunity from suit under RCW 51.24.020's deliberate intention exception. Id.

RCW 51.24.020 states:

If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title.

In 1995, in Birklid, the Washington Supreme Court examined earlier intentional injury exception cases. 127 Wn.2d at 862. It noted that previous courts interpreted RCW 51.24.020 as providing an exception for only cases of assault and battery by the employer against the employee. Id. It concluded that the statutory words "deliberate intention . . . to produce such injury" must mean more than assault and battery. Id. at 862-63. Consequently, it set out to define "deliberate intention" in RCW 51.24.020. See id. at 865.

The Birklid court held that "deliberate intention" means (1) the employer had actual knowledge that an injury was certain to occur and (2) willfully disregarded that knowledge. Id. at 865; see also Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wn.2d 16, 27-28, 109 P.3d 805 (2005). Before adopting that narrow test, the Birklid court considered and rejected broader tests from other jurisdictions. See id. at 864-65. The Washington Supreme Court recently applied the standard outlined in Birklid in Walston. 181 Wn.2d at 396-97.

4

Walston was exposed to asbestos while working at Boeing and was later diagnosed with mesothelioma. Id. at 393. Walston was exposed to asbestos throughout his career with Boeing (from 1956 to 1995), but only one 1985 incident of asbestos exposure was at issue. Id. at 394. In 1985, maintenance workers began repairing pipe insulation in the ceiling above the hammer shop where Walston worked. Id. The maintenance workers wore protective clothing and ventilators, but the hammer shop employees below did not. Id. The repairs caused visible dust and debris, and the employees requested that they work in a different location during the pipe repair. Id. Their supervisor told them to go back to work in the hammer shop, but told them to avoid working directly under the overhead repairs. Id.

Walston was diagnosed with mesothelioma in 2010 and passed away in 2013. Id. Walston's estate sued Boeing claiming that Walston's disease was caused by the asbestos exposure during his employment. Id. at 395. One of the experts testifying on behalf of the decedent stated that asbestos exposure is not certain to cause mesothelioma or any other disease. Id. at 394.

Boeing did not dispute that it was aware in 1985 that asbestos was hazardous or that the 1985 incident happened as described. Id. at 395. Instead, it argued that it did not have actual knowledge that Walston was certain to be injured and therefore it was immune from suit under the WIIA. Id. Boeing moved for summary judgment. Id.

The Walston court reasoned that as the expert acknowledged, asbestos exposure is not certain to cause mesothelioma or any other disease. Id. at 397. It continued that even though asbestos exposure does cause a risk of disease that is insufficient to meet the standard in Birklid. Id. It thus concluded that Walston's estate did not raise an issue

of material fact as to whether Boeing had <u>actual knowledge</u> that injury was <u>certain to occur</u>.[1] <u>Id.</u>

Here, the trial court granted Alcoa summary judgment based on the Washington Supreme Court's holding in <u>Walston</u>. The Kalahars argue that summary judgment was improper, because <u>Walston</u> is distinguishable. They argue that in <u>Walston</u> there was no evidence that Walston or any workers in his vicinity suffered immediate visible symptoms from asbestos exposure. They claim that unlike in <u>Walston</u>, the Kalahars offered evidence that Alcoa employees had visible symptoms and complained of those symptoms.

The Kalahars attempt to distinguish <u>Walston</u> based on their evidence of Kalahar's contemporaneous physical symptoms claiming that none existed in <u>Walston</u>. But, the <u>Walston</u> court ultimately reached its conclusion by reasoning that asbestos exposure is not certain to cause mesothelioma or any other disease—not because Walston failed to provide evidence of physical injury—contemporaneous or delayed. 181 Wn.2d at 397 ("[Asbestos exposure] does cause a <u>risk</u> of disease, but as we have previously held, that is insufficient to meet the <u>Birklid</u> standard."). Like the expert in <u>Walston</u>, the Kalahars' expert admitted that asbestos exposure, at any level, is never certain to cause mesothelioma or any other disease. We are bound by the Supreme Court's decision in <u>Walston</u>. Therefore, we conclude that the Kalahars have not raised a genuine issue of

---

[1] The Kalahars argue that the effect of the <u>Walston</u> court's application of the first prong of the <u>Birklid</u> test removes occupational diseases from the intentional injury exception to the WIIA altogether. They contend this is so, because no employee could ever prove that his or her employer knew with certainty that the employee would suffer an injury in the form of disease several years later. We can respond only that both <u>Walston</u> and <u>Birklid</u> are Washington Supreme Court decisions, and the legislature has not taken issue with either decision.

material fact as to whether Alcoa had actual knowledge that the injury—mesothelioma—was certain to occur.

    We affirm.

Appelwick, J.

WE CONCUR:

Dwyer, J.

Becker, J.