[No. 57713-1-I.   Division One.   June 4, 2007.]

CHAU NGOC NGUYEN ET AL., *Plaintiffs*, NAOMI NGUYEN ET AL., *Appellants*, v. DOAK HOMES, INC., ET AL., *Respondents*.

*Jaime M. Olander*, for appellants.

*Brant A. Godwin* (of *Dunlap & Soderland, PS*), for respondents.

¶1 PER CURIAM — Under certain circumstances, the seller's failure to disclose concealed defects to the purchaser of residential property constitutes fraudulent concealment. But because appellants Naomi Nguyen and Sam Hong (collectively Hong) did not purchase their home from respondent Darryl Doak and Doak Homes, Inc. (collectively Doak), their claim for fraudulent concealment fails. Nor did Hong establish a material factual issue regarding alleged

Consumer Protection Act (CPA), chapter 19.86 RCW, violations. Accordingly, we affirm the trial court's dismissal of Hong's claims on summary judgment.

## FACTS

¶2 Viewed in the light most favorable to Hong, the materials before the trial court established the following factual summary. In October 2002, Naomi Nguyen and her mother, Sam Hong, purchased a single-family home in Tukwila from Luong V. Le. Le, who was not a party to this action, had purchased the home one or two years earlier from the builder, Doak Homes, Inc. Doak Homes is owned and operated by Darryl Doak.

¶3 At some point after moving into the home, Hong noticed stains on an interior wall and eventually discovered mold growing in a wall cavity. On January 28, 2004, Hong and two other homeowners filed this action against Doak, alleging claims for breach of contract, breach of implied warranties, fraudulent concealment, negligence, and CPA violations.[1] Only Hong's claims for fraudulent concealment and CPA violations remain.

¶4 On November 4, 2005, Doak moved for summary judgment, arguing that both of Hong's claims failed, in part because there had been no contractual relationship or contact between the parties. By declaration, Darryl Doak maintained that he had built more than 20 homes in Tukwila based on the same plans without any of the problems alleged in Hong's complaint and that Doak representatives had never had any contact with Hong.

¶5 In opposition to summary judgment, Hong relied on a "preliminary report" by Mark Lawless, a construction expert, who inspected the three Doak-built homes that were initially involved in the lawsuit. Lawless concluded, in general terms, that the lack of a vapor barrier had caused moisture damage in the wall cavities of the homes and that

---

[1] Unlike Hong, the two other plaintiffs had purchased their homes directly from Doak.

nonconforming siding and window installation may have exacerbated the damage. Lawless found evidence of insufficient weather resistive barrier, missing caulk joints, missing vapor barrier primer and paint, and failure by the contractors "to conform to standard industry practice for siding, window, concrete, insulation, and vapor barrier installation." Lawless's preliminary report did not identify the specific deficiencies in Hong's home.

¶6 In his deposition testimony, Doak stated that in building more than 25 homes in the area, he had never received a "call-back" about moisture problems. Doak acknowledged that his supplier had selected the weather resistive barrier used on the Hong's home. Doak did not know the name of the product but recalled that the framers had installed it, along with the siding and the windows. Neither the Tukwila building inspectors nor Doak had inspected the installed weather resistive barrier prior to the sale of the home to Le.

¶7 In his deposition, James Perrault, Doak's construction expert, testified that his inspection showed that a product called Valeron had been installed as a weather resistive barrier in Hong's home. Although Perrault was unfamiliar with this particular product, he stated that it appeared to be suitable for this use. Because Perrault's inspection was conducted from the inside of the home, he could not confirm whether the Valeron had been correctly installed. But where his inspection detected elevated levels of moisture in the interior walls, Perrault found no evidence that the moisture had traveled from the outside through the Valeron. He concluded it was more likely that the moisture had entered the wall cavities from inside the home through the rim joist at floor level, where no vapor barrier was used or required by the energy code.

¶8 By order entered January 6, 2006, the trial court granted Doak's motion for summary judgment and dismissed Hong's claims.

# DECISION

## Standard of Review

■ ¶9 When reviewing a grant of summary judgment, this court undertakes the same inquiry as the trial court and considers the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3]

## Fraudulent Concealment

¶10 Hong first contends there is a material factual dispute as to whether Doak had actual knowledge of construction defects in Hong's home and the trial court therefore erred in dismissing her claim for fraudulent concealment. But Hong has failed to identify any relevant authority supporting such a claim against Doak.

■ ¶11 An action for fraudulent concealment, "a species of fraud,"[4] rests on the recognition that in the sale of residential dwellings, "the doctrine of caveat emptor no longer applies 'to the complete exclusion of any moral and legal obligation to disclose material facts not readily observable upon reasonable inspection by the purchaser.' "[5] In *Obde v. Schlemeyer*,[6] a leading case on fraudulent concealment, the defendants discovered a serious termite infestation in an apartment building they had just purchased. The

---

[2] *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995).

[3] CR 56(c); *White v. State*, 131 Wn.2d 1, 9, 929 P.2d 396 (1997).

[4] *Liebergesell v. Evans*, 93 Wn.2d 881, 893, 613 P.2d 1170 (1980).

[5] *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 523, 799 P.2d 250 (1990) (quoting *Hughes v. Stusser*, 68 Wn.2d 707, 711, 415 P.2d 89 (1966)).

[6] 56 Wn.2d 449, 353 P.2d 672 (1960).

defendants concealed the evidence of the infestation and then quickly sold the property to the plaintiffs without disclosing the defective condition of the building. On appeal, the court held that the defendants had "an affirmative duty . . . as between vendor and purchaser" to disclose the termite infestation.[7]

■ ■ ¶12 Consequently, an action for fraudulent concealment in the sale of a residential property rests on the duty of the seller, under certain circumstances, to affirmatively disclose the existence of a concealed defect to the purchaser:

> a builder-vendor's duty to speak arises in those situations where: there is a concealed defect in the premises of the residential dwelling, the builder-vendor has knowledge of the defect, the defect is dangerous to the property, health or life of the purchaser, and the defect is unknown to the purchaser and a careful, reasonable inspection on the part of the purchaser would not disclose the defect. In addition, the defect complained of must "substantially affect[ ] adversely the value of the property or operate[ ] to materially impair or defeat the purpose of the transaction." In such a situation, a builder-vendor's failure to inform the purchasers of the defect constitutes fraudulent concealment.[8]

■ ¶13 Here, it is undisputed that Hong purchased her home from Le, not Doak, and had no contact whatsoever with any Doak representative. Hong's reliance on *Hunter v. Knight, Vale & Gregory*[9] for the proposition that Doak owed her an independent or concurrent duty based on foreseeability is misplaced. *Hunter* involved a claim for negligence, not fraudulent concealment.[10] Hong's citation to *Pfeifer v.*

---

[7] *Hughes*, 68 Wn.2d at 711.

[8] *Atherton*, 115 Wn.2d at 524 (alterations in original) (citations omitted) (quoting *Mitchell v. Straith*, 40 Wn. App. 405, 411, 698 P.2d 609 (1985)).

[9] 18 Wn. App. 640, 571 P.2d 212 (1977), *review denied*, 89 Wn.2d 1021 (1978).

[10] *Id.* at 646 (accounting firm that negligently performed financial audit could reasonably foresee injury to managing stockholders as well as to corporation).

*City of Bellingham*[11] is equally unavailing. *Pfeifer* involved a lessee's claim under *Restatement (Second) of Torts* section 353 (1965) for physical harm resulting from a concealed dangerous construction defect.[12] Hong has not cited any relevant authority suggesting that a second purchaser can maintain an action for fraudulent concealment against a builder-vendor under the circumstances present here.[13]

¶14 In summary, because Hong failed to demonstrate any basis for a claim of fraudulent concealment against Doak, the issue of whether Doak had actual knowledge of construction defects is not material. The trial court properly dismissed Hong's claim on summary judgment.

*Consumer Protection Act*

■ ¶15 Hong also contends there are material factual issues remaining as to her CPA claim against Doak. In order to maintain a private CPA action, a plaintiff must establish the following five elements: (1) an unfair or deceptive act or practice (2) occurring in trade or practice, (3) affecting the public interest, (4) and injuring the plaintiff's business or property, and (5) a causal link between the unfair or deceptive acts and the injury suffered by plaintiff.[14] The failure to establish any one of these elements will defeat a CPA claim.[15]

---

[11] 112 Wn.2d 562, 772 P.2d 1018 (1989).

[12] *Id.* at 565.

[13] *See, e.g., Alejandre v. Bull*, 159 Wn.2d 674, 153 P.3d 864 (2007) (home purchaser sued seller); *Atherton*, 115 Wn.2d 506 (condominium owners sued builder/seller); *Sloan v. Thompson*, 128 Wn. App. 776, 115 P.3d 1009 (2005) (home purchaser sued builder/seller), *review denied*, 157 Wn.2d 1003 (2006); *Burbo v. Harley C. Douglass, Inc.*, 125 Wn. App. 684, 106 P.3d 258 (home purchaser sued builder/seller), *review denied*, 155 Wn.2d 1026 (2005); *Kelsey Lane Homeowners Ass'n v. Kelsey Lane Co.*, 125 Wn. App. 227, 103 P.3d 1256 (2005) (condominium owners sued project's declarant).

[14] *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986); RCW 19.86.020.

[15] *Hangman Ridge*, 105 Wn.2d at 793.

■ ■ ¶16 The CPA does not define "unfair or deceptive act or practice," but "[i]mplicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance."[16] A seller's failure to disclose material facts to the purchaser in a real estate transaction may support a CPA claim, even if the circumstances do not establish fraudulent concealment.[17]

■ ¶17 But Hong has not identified any basis for her claim that Doak failed to comply with an obligation to disclose to her any material defects about the house. Hong's reliance on the general allegations in Lawless's report about Doak's failure to comply with industry standards when installing various components of the home is misplaced. The mere failure to comply with industry standards does not constitute a deceptive act or practice under the CPA.[18] Where there is a duty to disclose, the failure to comply with industry standards may provide some evidence of a deceptive act or practice, but those circumstances are not present here.[19] Because Hong has made no showing of a deceptive act or practice, the trial court did not err in dismissing her CPA claim.

¶18 Affirmed.

---

[16] *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*, 134 Wn. App. 210, 226, 135 P.3d 499 (2006).

[17] *Griffith v. Centex Real Estate Corp.*, 93 Wn. App. 202, 217, 969 P.2d 486 (1998), *review denied*, 137 Wn.2d 1034 (1999); *see also Testo v. Russ Dunmire Oldsmobile, Inc.*, 16 Wn. App. 39, 554 P.2d 349 (1976) (the failure to disclose a fact that the seller in good faith is bound to disclose generally constitutes an unfair or deceptive act).

[18] *Griffith*, 93 Wn. App. at 217 n.7.

[19] *See id.*