[No. 58679-3-I. Division One. July 16, 2007.]
LUIS RAMOS ET AL., *Appellants*, v. DEBBIE ARNOLD ET AL., *Respondents*.

12

14

*Shawn G. Hart* (of *Hart Law Office*), for appellants.
*Gregory S. Petrie* (of *Krutch Lindell*), for respondents.

¶1 BECKER, J. — An appraiser may be liable to a home purchaser for negligent misrepresentations in an appraisal report if the purchaser can demonstrate reliance on the report. Because appellants failed to establish reliance, their claims against the appraiser were properly dismissed on summary judgment.

¶2 The Ramos family purchased a home in Lynnwood in 2001. Before making an offer, they noticed that a three-foot portion of the hallway ceiling was sagging. They questioned their real estate agent about this defect, and the agent stated that it was likely a "PUD [public utility district] package,"[1] apparently referring to insulation added to conserve energy. A cousin who worked in the drywall and

---

[1] Clerk's Papers at 18 (Dep. of Karina Ramos-Gunn (Feb. 25, 2003)).

ceiling business came and looked at the hallway ceiling and told the Ramoses that the sag may have been caused by water damage. Another family member expressed concern over the condition of the ceiling. The Ramoses nevertheless made an offer on the home on September 24, 2001.

¶3 Their purchase of the property was conditioned on a satisfactory home inspection. The main deficiencies identified in the report of the inspector selected by the Ramoses were that the dishwasher was not working and the roof was in "very poor condition with decay under the trees and missing shakes on the south faces and east face."[2] The inspection report advised that the roof would not last much longer: "Expect to replace in near future."[3] The report did not mention the sagging ceiling in the hallway. The inspection was completed on September 28, 2001.

¶4 After the inspection, the Ramoses waived the contingencies and proceeded with the purchase. To finance the home, they applied for a loan through Washington Mutual Bank. The bank hired Debbie Arnold from Arnold Appraisal Services to appraise the property. Arnold conducted a visual inspection of both the inside and exterior of the home in order to estimate the market value of the property. Arnold noted that some moss had collected on the roof, but she did not report noticing any apparent defects either inside or outside the home. She submitted her appraisal report to Washington Mutual on October 5, 2001. During the appraisal process, Arnold did not communicate with the Ramos family and she did not send a copy of the appraisal to them. Karina Ramos-Gunn testified during her deposition that she did not have any contact with Arnold and had not seen the appraisal report.[4]

¶5 The sale of the home closed on October 15, 2001. Several days after the Ramos family moved in, the roof began leaking during a storm. Water damaged the roof and

---

[2] Clerk's Papers at 172 (Plus One Inspection Servs. Report).

[3] Clerk's Papers at 172 (Plus One Inspection Servs. Report).

[4] Clerk's Papers at 201 (Karina Ramos-Gunn's Dep. (Apr. 17, 2003)).

ceiling and caused mold growth. The ceiling started crumbling and material containing asbestos fell into the house, causing respiratory illness in Karina and the two children. Inspection of the hole in the roof led to discovery of a nest of carpenter ants. The Ramoses began to make costly repairs on the home to make it habitable. They filed a claim under their homeowners insurance policy. A letter from their insurance provider indicates that their claim for water damage was paid for, but their claim for mold damage was rejected in July 2002.

¶6 The Ramoses filed this lawsuit in Snohomish County Superior Court in January 2003 against several defendants. Their action against Debbie Arnold and her appraisal company alleged breach of contract, negligence in conducting the appraisal, and violation of the Consumer Protection Act, chapter 19.86 RCW. The Ramoses claimed that Arnold was negligent by failing to note the sagging portion of the ceiling in her appraisal report. Arnold moved for summary judgment in June 2006. Arnold contended that summary judgment was appropriate because the Ramoses were actually aware of the sagging ceiling before purchasing the home. In a declaration, Arnold stated that she did not notice the sagging ceiling while conducting the appraisal inspection. She also argued that the Ramoses could not show that they had relied on the report.

¶7 In response, the Ramoses claimed that "Debbie Arnold did not inspect the interior of the residence and stated in her report that she did, or in the alternative, she inspected the interior and failed to identify major defects affecting the value of the residence."[5] Further, they claimed that Arnold had breached duties established by the Uniform Standards of Professional Appraisal Practice. To counter Arnold's claim that the Ramoses had not relied on the appraisal report, Karina declared that she did review "the contents of" the appraisal before the purchase:

---

[5] Clerk's Papers at 122 (Pl.'s Resp. to Def.'s Mot. for Summ. J. (July 3, 2006)).

I wanted to know the effect of the condition of the Residence on the value of the residence, so prior to making the decision to take out the home loan with Washington Mutual Bank, I reviewed the contents of the appraisal with Mike McPherson, loan officer of Washington Mutual Bank. I relied on the appraisal to know the value of the Residence and the appraisal did not discuss the condition of the sagging ceiling or effect of the sagging ceiling or several other conditions on the value of the Residence.[6]

This statement contradicted her deposition testimony in 2003:

[MR. PETRIE]: So, your claim is that she—the appraiser— did not inspect the interior of the house, but represented in her appraisal that she did; correct?

MR. HART: I'm going to object—

[KARINA RAMOS-GUNN]: I don't know; I haven't seen it.

Q. (BY MR. PETRIE) You haven't seen the appraisal?

[KARINA RAMOS-GUNN]: No, I have not.[7]

¶8 The court granted summary judgment on July 14, 2006. This appeal followed.

¶9 A moving party under CR 56 bears the initial burden of demonstrating an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Thereafter, the nonmoving party must set forth specific facts evidencing a genuine issue of material fact for trial. The trial court must consider the evidence and the reasonable inferences therefrom in a light most favorable to the nonmoving party. This court reviews the facts and law with respect to summary judgment de novo. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

¶10 The Ramoses argue that they have set forth evidence raising a material issue of fact as to all the elements

---

[6] Clerk's Papers at 40 (Decl. of Karina Ramos-Gunn (July 2, 2006)).

[7] Clerk's Papers at 201 (Karina Ramos-Gunn's Dep. (Apr. 17, 2003)).

of negligence—duty, breach, causation, and damages. Arnold responds that in the absence of contractual privity, a claim by a home purchaser against an appraiser must prove the elements of negligent representation, including reliance.

¶11 Both parties cite the same case to support their respective positions: *Schaaf v. Highfield*, 127 Wn.2d 17, 896 P.2d 665 (1995). In *Schaaf*, the homeowner discovered that the roof leaked and sued the appraiser. He claimed the appraiser negligently failed to note the defective roof in the appraisal report. The trial court concluded that the appraiser owed no duty to the prospective homebuyer and granted the appraiser's motion for summary judgment. On appeal, Schaaf argued that lack of contractual privity with the appraiser did not negate the fact that the appraiser owed him a duty of care. The court concluded that under the law of negligent misrepresentation, an appraiser does owe a duty of care to third parties. *Schaaf*, 127 Wn.2d at 21. A purchaser may state a claim for negligent misrepresentation under *Restatement (Second) of Torts* § 552 (1977), which states in part:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

¶12 Although the court concluded that the appraiser owed Schaaf a duty of care, the court affirmed the trial

court's dismissal of the case on summary judgment because Schaaf had not demonstrated justifiable reliance on the appraisal report. "As Schaaf already knew *before* he bought the house that it needed a new roof, he simply cannot blame the appraiser for failing to report the roof needed repair." *Schaaf*, 127 Wn.2d at 30. Lack of reliance on the appraisal report barred Schaaf's claim.

¶13 Under *Schaaf*, if the Ramoses did not see the appraisal report before they purchased the home, they could not have relied on it. Karina's declaration states that she "reviewed the contents"[8] of the appraisal, but in her deposition testimony, she denied knowledge of the representations made by the appraiser in her report, stating, "I haven't seen it."[9]

¶14 When a party has given clear answers to unambiguous questions that negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony. *Marshall v. AC&S, Inc.*, 56 Wn. App. 181, 185, 782 P.2d 1107 (1989). In her declaration, Karina gave no explanation for the change in her testimony. Following *Marshall*, we disregard her declaration and conclude there is no issue of fact as to the lack of reliance. The Ramoses' claim fails under the negligent misrepresentation analysis detailed in *Schaaf*. And the claim would fare no better under a pure negligence analysis, because without proof of reliance there is no basis upon which to find that any breach of duty by Arnold proximately caused their damages.

## CONSUMER PROTECTION ACT

¶15 To prevail in a private Consumer Protection Act action, a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice (2) occurring in trade

---

[8] Clerk's Papers at 40 (Decl. of Karina Ramos-Gunn (July 2, 2006)).

[9] Clerk's Papers at 201 (Karina Ramos-Gunn's Dep. (Apr. 17, 2003)).

or commerce, (3) public interest impact, (4) injury to plaintiff in his or her business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). "Implicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance." *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*, 134 Wn. App. 210, 226, 135 P.3d 499 (2006).

¶16 The Ramoses contend that Arnold committed an unfair or deceptive act by failing "to include major defects in the residence in the appraisal report which kept the paperwork 'clean' on the residence, prevented further investigation, and caused the Ramoses to enter into the purchase and sale agreement for the residence."[10]

¶17 The purpose of the Consumer Protection Act is to "complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." RCW 19.86.920. The term "trade" as used by the Consumer Protection Act includes only the entrepreneurial or commercial aspects of professional services, not the substantive quality of services provided. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 169, 744 P.2d 1032 (1987). Entrepreneurial aspects include how the cost of services is determined, billed, and collected and the way a professional obtains, retains, and dismisses clients. *Short v. Demopolis*, 103 Wn.2d 52, 61, 691 P.2d 163 (1984). Claims directed at the competence of and strategies employed by a professional amount to allegations of negligence and are exempt from the Consumer Protection Act. *Short*, 103 Wn.2d at 61-62.

¶18 The Ramoses' complaint is targeted at the alleged inadequacy of the actual appraisal rather than the entrepreneurial aspect of Arnold's business. Since this

---

[10] Appellant's Opening Br. at 22.

claim amounts to an allegation of negligence, the trial court properly dismissed the Consumer Protection Act claim on summary judgment.

## CONTRACT CLAIM

██ ¶19 The Ramoses contend that the trial court erred in dismissing their contract claim against Arnold. They cite *Pope v. University of Washington*, 121 Wn.2d 479, 492, 852 P.2d 1055 (1993): "The law recognizes that facts may create a fiduciary relationship between contracting parties. Such relationships have been found where one party has superior knowledge and thereby induces reliance in the other party." (Citation omitted.) This claim fails because the Ramoses were not a party to the appraisal contract.

██ ██ ¶20 The Ramoses also contend they are third party beneficiaries to the contract between Arnold and the bank. A party is a third party beneficiary only if the contracting parties intend to create such a relationship at the time the contract is formed: " '[T]he creation of a third-party beneficiary contract requires that the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract.' " *Schaaf*, 127 Wn.2d at 21 n.5 (internal quotation marks omitted) (quoting *Postlewait Constr., Inc. v. Great Am. Ins. Cos.*, 106 Wn.2d 96, 99-101, 720 P.2d 805 (1986)). The test of intent is an objective one. The key is whether performance of the contract would necessarily and directly benefit the party claiming to be a third party beneficiary. *Lonsdale v. Chesterfield*, 99 Wn.2d 353, 362, 662 P.2d 385 (1983). Although the appraisal report identifies the Ramoses as potential borrowers, nothing in the report indicates that Arnold and the bank intended for Arnold to assume a direct obligation to the Ramoses. The Ramoses do not demonstrate that they would necessarily benefit from the terms of the contract between Arnold and the bank. We

22

conclude the Ramoses were not third party beneficiaries to the contract.

¶21 Affirmed.

BAKER and DWYER, JJ., concur.