250 P.3d 130 (2011)
Denise DALIEN, individually, and as a Class Representative, Appellant,
v.
Stanley JACKSON, M.D.; Philip C. Kierney, M.D.; and Philip C. Kierney, M.D., P.S., Respondents.
No. 39875-3-II.
Court of Appeals of Washington, Division 2.
April 19, 2011.
*131 Daniel A. Mares, Thaddeus P. Martin & Associates, Lakewood, WA, for Appellant.
Denise Dalien, Tacoma, WA, pro se.
Steven Frederick Fitzer, Sally Briggs Leighton, Fitzer Leighton & Ayers LLC, Timothy R. Gosselin, Gosselin Law Office PLLC, Tacoma, WA, Rebecca Sue Ringer, David J. Corey, Floyd Pflueger & Ringer PS, Seattle, WA, for Respondent.

UNPUBLISHED OPINION
HARTMAN, J.P.T.[1]
¶ 1 Denise Dalien appeals a trial court's order dismissing her class action Consumer *132 Protection Act (CPA)[2] lawsuit. She argues that the trial court erred when it ruled that (1) her class action lawsuit amounted to claim splitting with another lawsuit that she had earlier filed and (2) she did not have an actionable CPA claim. We hold that Dalien did not have an actionable CPA claim and affirm the trial court's dismissal of her CPA lawsuit.

FACTS
¶ 2 Dr. Stanley Jackson is a plastic surgeon. In July 1999, he injured his left eye when a bungee cord struck it. He received treatment, including surgery, and took three to four weeks off from work.
¶ 3 Sometime in 2000, Dr. Jackson performed breast augmentation surgery on Denise Dalien using saline implants. In 2005, after losing weight due to exercise and diet, Dalien noticed that she had some indentation and rippling on her upper left breast. She went to Dr. Jackson, who removed her saline implants and gave her gel implants. Dalien was unhappy with the result, and Dr. Jackson performed additional revision procedures between 2005 and April 2006.
¶ 4 In July 2006, Dr. Jackson experienced a change in his vision and saw his ophthalmologist, who referred him to surgery. After an unsuccessful surgical procedure, Dr. Jackson stopped working and retired in October 2006.
¶ 5 In 2008, Dalien filed a medical malpractice lawsuit against Dr. Jackson, alleging that she did not give informed consent to the breast augmentation procedures and that the procedures were performed negligently. In February 2009, she filed a second, separate lawsuit against Dr. Jackson as a class action, alleging CPA violations. She amended that complaint in June 2009 to add Dr. Jackson's partner, Dr. Philip Kierney, as an additional defendant.
¶ 6 In her CPA lawsuit, Dalien alleged that Dr. Jackson and Dr. Kierney failed to properly inform prospective patients of the alleged negative impact of Dr. Jackson's eye injury. Paragraphs 5.1.5 and 5.1.6 of Ms. Dalien's first amended complaint specifically provide:
5.1.5 From the time of his injury until his retirement in August of 2006, Dr. Jackson continued to take new patients and continued to perform surgery on patients. Dr. Jackson did not inform any of his then current or potential patients of any negative impact his eye injury had on his ability to perform surgery. Dr. Jackson's failure to obtain informed consent was used to promote the entrepreneurial aspects of his practice. He promoted operations and/or services to increase his profits and the volume of patients and then failed to adequately advise the patients of risks or alternative procedures.
5.1.6 Dr. Kierney did not inform any of Dr. Jackson's current or potential patients of any negative impact Dr. Jackson's eye injury had on Dr. Jackson's ability to perform surgery.
Clerk's Papers (CP) at 154.
¶ 7 Dr. Jackson and Dr. Kierney moved separately under CR 12(b)(6) to dismiss Dalien's class action lawsuit. The trial court granted Dr. Jackson's motion to dismiss with prejudice, ruling that Dalien's allegations did not support a valid CPA claim and that her CPA lawsuit was not distinct or separate from her informed consent/negligence lawsuit. The trial court's written order stated:
Plaintiff's Complaint and Amended Complaint against Defendant Jackson is dismissed with prejudice; and this order does not prohibit plaintiffs from seeking to amend the claims from this action into [Dalien's negligence lawsuit].
CP at 404. The trial court subsequently heard and granted Dr. Kierney's motion to dismiss with prejudice.[3]

Standard of Review
¶ 8 When the parties present matters outside the pleadings that the trial court accepts *133 on a motion under CR 12(b)(6), we treat the motion as one for summary judgment and dispose of it accordingly. Clallam Cnty. Citizens for Safe Drinking Water v. City of Port Angeles, 137 Wash.App. 214, 227, 151 P.3d 1079 (2007). We review an order granting summary judgment de novo and engage in the same inquiry as the trial court. Weden v. San Juan Cnty., 135 Wash.2d 678, 689, 958 P.2d 273 (1998). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We view the facts and any reasonable inferences from those facts in the light most favorable to the nonmoving party. Federal Way Sch. Dist. No. 210 v. State, 167 Wash.2d 514, 523, 219 P.3d 941 (2009).

ANALYSIS
¶ 9 The issue here is whether the trial court properly found that Dalien did not have an actionable CPA claim.[4] We hold that the CPA claim was properly dismissed with prejudice, both as to Dr. Jackson and Dr. Kierney.
¶ 10 "To establish a CPA violation, the plaintiff must prove five elements: (1) an unfair or deceptive act or practice that (2) occurs in trade or commerce, (3) impacts the public interest, (4) and causes injury to the plaintiff in her business or property, and (5) the injury is causally linked to the unfair or deceptive act." Michael v. Mosquera-Lacy, 165 Wash.2d 595, 602, 200 P.3d 695 (2009). We liberally construe the CPA. Michael, 165 Wash.2d at 602, 200 P.3d 695.
¶ 11 Dr. Jackson and Dr. Kierney maintain that not disclosing Dr. Jackson's eye injury did not occur in trade or commerce. "`The term "trade" as used by the Consumer Protection Act includes only the entrepreneurial or commercial aspects of professional services, not the substantive quality of services provided.'" Michael, 165 Wash.2d at 602-03, 200 P.3d 695 (quoting Ramos v. Arnold, 141 Wash.App. 11, 20, 169 P.3d 482 (2007)). "The question is whether the claim involves entrepreneurial aspects of the practice or mere negligence claims, which are exempt from the CPA." Michael, 165 Wash.2d at 603, 200 P.3d 695. "`Claims directed at the competence of and strategies employed by a professional amount to allegations of negligence and are exempt from the Consumer Protection Act.'" Michael, 165 Wash.2d at 603, 200 P.3d 695 (quoting Ramos, 141 Wash.App. at 20, 169 P.3d 482).
¶ 12 Learned professions are not exempt from application of the CPA. Michael, 165 Wash.2d at 602, 200 P.3d 695. The entrepreneurial aspects of learned professions, including medical professionals, are billing and obtaining and retaining patients. Michael, 165 Wash.2d at 603, 200 P.3d 695. But entrepreneurial aspects do not include a physician's skills in examining, diagnosing, treating, or caring for a patient. Michael, 165 Wash.2d at 603, 200 P.3d 695.
¶ 13 Dalien argues that Dr. Jackson and Dr. Kierney engaged in trade or commerce because they solicited and retained patients by not disclosing Dr. Jackson's eye injury. She argues that, had they disclosed Dr. Jackson's eye injury, market forces would have decreased either their number of patients or the amount they could have billed.
¶ 14 Our Supreme Court considered a very similar issue in Michael. In that case, a *134 periodontist substituted cow bone for human bone to finish a dental procedure. Michael, 165 Wash.2d at 604, 200 P.3d 695. The court held that this was not actionable under the CPA because it simply related to the doctor's judgment and treatment of a patient, not to billing or obtaining and retaining patients. Michael, 165 Wash.2d at 604, 200 P.3d 695. The record in Michael contained no evidence that cow bone was used to increase profits or the number of patients. Michael, 165 Wash.2d at 604, 200 P.3d 695. Instead, when the human bone supply ran out during the procedure, the periodontist used her judgment and skills to finish the procedure with cow bone. Michael, 165 Wash.2d at 604, 200 P.3d 695.
¶ 15 Like in Michael, Dalien has failed to show that Dr. Jackson's nondisclosure of his eye injury is entrepreneurial. Dr. Jackson's nondisclosure does not relate to Dr. Jackson's billing or obtaining and retaining patients. Dalien has presented no evidence that Dr. Jackson represented that he had better vision than his competitors or somehow relied on his vision to promote his business. Dr. Jackson was in the business of caring for patients, not advertising superior eyesight. Instead, Dr. Jackson's nondisclosure merely related to his judgment and treatment of a patient. To the extent that Dr. Jackson's eye injury may have affected his ability to examine, diagnose, treat, or care for his patients, that question is actionable under the negligence theory, which Dalien is pursuing in her original lawsuit.
¶ 16 We hold that Dalien did not have an actionable CPA claim as a matter of law and affirm the trial court's dismissal of her CPA lawsuit.
¶ 17 A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: QUINN-BRINTNALL, J., and WORSWICK, A.C.J.
NOTES
[1] Judge Russell Hartman is serving as judge pro tempore of the Washington State Court of Appeals, Division II, under CAR 21(c).
[2] Ch. 19.86 RCW.
[3] Dr. Kierney was unable to join Dr. Jackson's motion to dismiss because he did not have sufficient notice before Dr. Jackson's CR 12(b)(6) hearing that he was a named defendant.
[4] Dalien also argues that the trial court erred when it found "claim splitting principles" apply because her CPA claim was not distinct or separate from her informed consent negligence action. Verbatim Report of Proceedings (July 17, 2009) at 19. But we do not address this ruling because the trial court's order as to Dr. Jackson was ambiguous and left open the possibility that she could add her CPA claim to her negligence action. The ruling as to Kierney, however, was not ambiguous, and he is entitled to a final judgment. Therefore, we determine the outcome of this case on the merits of Dalien's CPA claim.

Nevertheless, we note that claim splitting is another term for res judicata, which has a threshold requirement of a valid and final judgment on the merits in a prior suit. Hisle v. Todd Pac. Shipyards Corp., 151 Wash.2d 853, 865, 93 P.3d 108 (2004). Res judicata does not appear to apply here because, at the time when Dalien's CPA lawsuit was dismissed, Dalien had not yet received a final judgment in her negligence lawsuit. Kelly-Hansen v. Kelly-Hansen, 87 Wash. App. 320, 328-29, 941 P.2d 1108 (1997).