IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| MICHAEL TIMMERMAN and JUNE TIMMERMAN, | No.  50954-7-II |
| Appellants, | |
| v. | |
| SOUTH SOUND OUTREACH SERVICES and Doe Defendants 1 through 20, inclusive, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, J. — Michael and June Timmerman appeal from the superior court's orders dismissing their claims on summary judgment.  The Timmermans filed a complaint against South Sound Outreach Services for violation of the Consumer Protection Act[1] and intentional infliction of emotional distress, claiming that South Sound's failure to refer them to foreclosure mediation deprived them of the opportunity to prevent foreclosure through mediation.  We hold that South Sound's actions did not occur in trade or commerce, and that the Timmermans failed to establish the tort of outrage.  Consequently, we affirm.

---

[1] Ch. 19.86 RCW.

No. 50954-7-II

FACTS[2]

A.      *Foreclosure Fairness Act and South Sound Background*

Under the Foreclosure Fairness Act, homeowners facing foreclosure can seek to avoid foreclosure by contacting an approved housing counselor or an attorney to obtain a referral to foreclosure mediation. RCW 61.24.163. Based on the borrower's circumstances, the counselor or attorney can make a referral to mediation. RCW 61.24.163 (1), (2); RCW 61.24.160 (2), (3). The referral can be made any time after a Notice of Default is issued, but no later than twenty days after the Notice of Sale is recorded. RCW 61.24.163 (1); RCW 61.24.160 (3). The Notice of Default instructs homeowners to contact an approved housing counselor for more information on opportunities to avoid foreclosure. Once a housing counselor refers a borrower to mediation, the lender and borrower are required to participate in the mediation process. RCW 61.24.163.

South Sound is a nonprofit organization that provides a variety of financial and housing related services to low income individuals. In 2013, South Sound provided foreclosure mediation services. South Sound did not advertise its services. To become a South Sound client, consumers were required to complete an application and intake paperwork, make an intake appointment, sign consent forms to allow South Sound to communicate with their lending institution, attend a group informational meeting, and pay a "statutorily-approved fee" to cover copying costs. Clerk's Papers (CP) at 26.

---

[2] Because this matter is before us on appeal from a summary judgment decision, we recite the facts in the light most favorable to the Timmermans.

2

B.      *The Timmermans and South Sound*

In 1998, the Timmermans obtained a loan from Citibank to purchase a residential property. The loan was secured by a deed of trust encumbering the property. Citibank assigned the deed of trust to JP Morgan Chase & Co. The Timmermans later took out two additional loans from the Boeing Employees Credit Union (BECU), also secured by deeds of trust encumbering the property.

In 2012, the Timmermans encountered financial difficulties and fell behind on their payments to Chase. In March 2013, Chase sent a Notice of Default to the Timmermans, stating that they had defaulted on their payments and if they did not take action, the property would be sold. In May, the Timmermans filed Chapter 7 bankruptcy. In July, their debts were discharged in bankruptcy. After their bankruptcy discharge, the Timmermans stopped paying BECU.

In the summer months of 2013, Ms. Timmerman's sister, Debbie Bood, went to South Sound for help with her own foreclosure. Bood went to South Sound's office for an intake appointment, completed intake paperwork, and attended a group informational meeting about South Sound's foreclosure prevention program. Ms. Timmerman accompanied Bood to her appointment. South Sound assigned Bood's case to Diane Hall, a housing counselor.

In September, Chase served the Timmermans with a Notice of Trustee's Sale, stating that a nonjudicial foreclosure sale was scheduled for January 31, 2014.

On October 3, 2013, the Timmermans e-mailed Hall, saying:

Hi Diane,
My name is June Timmerman and I met you at a meeting I attended with my sister, Debbie Bood. We have received our foreclosure notice with the sale date of January 31, 2014. I am in my 20 day response period to request a mediation. I

> believe the 20th day will be OCTOBER 9, 2013. PLEASE call and/or email me with what you need from me. I called a couple of times (was unable to leave a message as voicemail was full) but I was able to leave a voice message on the voicemail yesterday.
> Please Advise,
> Thank you so much—as we have every intention of keeping our house, if possible.
> I look forward to hearing from you,
> June

CP at 174.

Hall responded the same day saying: "I am sorry that you have not been able to reach me. I can make the referral but could you please provide the property address so I can look up the Notice in the public records. I will follow-up with you hopefully tomorrow. Thanks." CP at 174. There is no showing in the record that the Timmermans provided Hall the property address.

On January 15, 2014, the Timmermans e-mailed Hall, stating that they "ha[d]n't heard back from [her]," and asking about the status of their mediation. CP at 173. On January 27, the Timmermans again e-mailed Hall checking on the status of their mediation because they had not been contacted by a mediator and had not heard from anyone else. The Timmermans also stated that BECU had sent a Notice of Trustee's Sale with a sale scheduled in May 2014. The Timmermans asked Hall to request a mediation for their BECU loan. On January 30, the Timmermans e-mailed Hall to check on the status of their mediation because they had not heard back from her, and Chase's foreclosure sale was scheduled for January 31. Sometime during the week prior to the sale, the Timmermans called South Sound and spoke with "Bob," an employee of South Sound, who told them that Hall had the situation under control, but noted that he did not have access to Hall's files. CP at 133.

On January 31, Chase sold the property to BECU, with surplus funds being distributed to other lienholders. On February 5, the Timmermans e-mailed Hall stating that BECU purchased the property at the foreclosure sale. On February 6, the Timmermans e-mailed Hall asking for information about the status of their home, stating, "If you are NOT able to help then please be up front and let me know so we can seek assistance elsewhere!!!" CP at 59. The record does not show whether Hall responded to the Timmermans' e-mails.

At some point after the foreclosure, the Timmermans spoke with Hall and she assured them that she would "get the sale rescinded." CP at 133. Hall did not get the sale rescinded.

South Sound does not have a record of the Timmermans as a client. The Timmermans never contend that they completed any South Sound intake paperwork.

C.    *Superior Court Proceedings*

In 2016, the Timmermans filed a complaint against South Sound, bringing two causes of action. First, the Timmermans claimed that South Sound violated the Consumer Protection Act (CPA). The Timmermans alleged that South Sound "did not adhere to its duties to the Timmermans and did not perform any of the services that they agreed to perform for the Timmermans." CP at 6. Further, they alleged that South Sound "continued to employ Ms. Hall without any oversight" even though it knew that Hall "caused at least on[e] other homeowner to lose her home to foreclosure because she did not do her job." CP at 7.

Second, the Timmermans claimed that South Sound's actions constituted intentional infliction of emotional distress. The Timmermans alleged that South Sound's actions caused significant emotional distress as a result of losing their home to foreclosure and not having an

opportunity to save it. Notably, the Timmermans' complaint alleged no action sounding in negligence. They orally verified this tactical decision to the trial court during the course of the proceedings.

On February 23, 2017, South Sound filed a partial motion for summary judgment to dismiss the Timmermans' CPA claim. South Sound argued, in part, that its services did not occur in "trade or commerce," as required by the CPA. CP at 22. Further, South Sound argued that the Timmermans' claim did not affect the public interest as required by the CPA because Hall was no longer employed by South Sound, and South Sound no longer participated in the foreclosure mediation program.

The Timmermans argued that providing housing counseling services constituted trade or commerce, and that their claim affected the public interest because Hall's actions had resulted in another homeowner losing her home. Ms. Timmerman submitted a declaration stating the sequence of events, and providing the e-mails she had sent to Hall. Counsel for the Timmermans also filed a declaration, stating that through her representation of a client in a separate matter, she learned that Hall and South Sound failed to provide competent assistance in her client's foreclosure process. Counsel stated that neither Hall nor South Sound were parties to that case, and the case was settled under confidential terms.

South Sound moved to strike counsel's declaration, arguing that it contained inadmissible hearsay, and therefore should not be considered at summary judgment. South Sound further argued that counsel's declaration was improper under the Rules of Professional Conduct because counsel was acting as a material witness.

The superior court granted South Sound's partial motion for summary judgment, finding that the Timmermans' claim did not meet the requirements of the CPA, even considering counsel's declaration, because the Timmermans failed to establish that the actions occurred in trade or commerce or affected the public interest.

Then, South Sound moved for summary judgment to dismiss the Timmermans' claim for intentional infliction of emotional distress. South Sound argued that the Timmermans' allegations did not establish sufficiently outrageous conduct. The superior granted South Sound's motion for summary judgment.

The Timmermans appeal.

## ANALYSIS

The Timmermans argue that the superior court erred by dismissing their claims on summary judgment. We disagree because South Sound's actions did not occur in trade or commerce, and therefore are not subject to the CPA and because South Sound's actions were not sufficiently outrageous to establish intentional infliction of emotional distress.

A.      *Legal Principles*

We review a superior court's order granting summary judgment de novo, engaging in the same inquiry as the superior court. *Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014). We review all facts and reasonable inferences in the light most favorable to the nonmoving party. *Lyons*, 181 Wn.2d at 783.

Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c). A genuine issue of

material fact exists when, after weighing the evidence, reasonable minds could reach different factual conclusions. *Jones v. State*, 170 Wn.2d 338, 352, 242 P.3d 825 (2010). "A material fact is one on which the litigation's outcome depends in whole or in part." *TT Props. v. City of Tacoma*, 192 Wn. App. 238, 245, 366 P.3d 465, *review denied*, 185 Wn.2d 1036 (2016).

"A defendant is entitled to summary judgment if (1) the defendant shows the absence of evidence to support the plaintiff's case, and (2) the plaintiff fails to come forward with evidence creating a genuine issue of material fact on an element essential to the plaintiff's case." *Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey P.C.*, 180 Wn. App. 689, 699, 324 P.3d 743 (2014). If a defendant satisfies the initial burden of establishing the absence of a material fact, the inquiry then shifts to the plaintiff. *Burton v. Twin Commander Aircraft LLC*, 171 Wn.2d 204, 222-23, 254 P.3d 778 (2011). If the plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, then summary judgment is proper. *Burton*, 171 Wn.2d at 223. We may affirm summary judgment on any ground supported by the record. *Riley v. Iron Gate Self Storage*, 198 Wn. App. 692, 700, 395 P.3d 1059, *review denied*, 189 Wn.2d 1010 (2017).

B.      *Consumer Protection Act*

The Timmermans argue that the superior court erred by granting South Sound's motion for summary judgment dismissing their CPA claim. Specifically, they argue that South Sound was engaged in trade or commerce by providing housing counseling services, which are akin to legal and medical practices and therefore subject to the CPA. We hold that the trial court did not

err in dismissing the CPA claim because South Sound's conduct did not occur in trade or commerce.

Washington's CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To prevail in a CPA action, the plaintiff must establish five elements: "(1) an unfair or deceptive act or practice that (2) occurs in trade or commerce, (3) impacts the public interest, (4) and causes injury to the plaintiff in her business or property, and (5) the injury is causally linked to the unfair or deceptive act." *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 602, 200 P.3d 695 (2009); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 792-93, 719 P.2d 531 (1986). A CPA claim fails if a plaintiff fails to establish all five elements. *Nguyen v. Doak Homes, Inc.*, 140 Wn. App. 726, 733, 167 P.3d 1162 (2007).

Whether South Sound engaged in entrepreneurial activities that violate the CPA is a question of fact. *Eriks v. Denver*, 118 Wn.2d 451, 465, 824 P.2d 1207 (1992). But, where the facts are not disputed as to what the parties did, we may decide the question as a matter of law. *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 150, 930 P.2d 288 (1997); *Patrick v. Wells Fargo Bank, N.A.*, 196 Wn. App. 398, 408, 385 P.3d 165 (2016).

The CPA attempts to reach every person who conducts unfair or deceptive acts or practices in any trade or commerce. *Michael*, 165 Wn.2d at 602; *Short v. Demopolis*, 103 Wn.2d 52, 61, 691 P.2d 163 (1984). "'Trade' and 'commerce' shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). "The term 'trade' as used by the [CPA] includes only the

entrepreneurial or commercial aspects of professional services, not the substantive quality of services provided." *Ramos v. Arnold*, 141 Wn. App. 11, 20, 169 P.3d 482 (2007). Entrepreneurial or commercial aspects relate to the promotion of operations or of services to increase profits, and to how services are determined, billed, and collected. *Eriks*, 118 Wn.2d at 464.

"'Claims directed at the competence of and strategies employed by a professional amount to allegations of negligence and are exempt from the Consumer Protection Act.'" *Michael*, 165 Wn.2d at 603 (quoting *Ramos*, 141 Wn. App. at 20); *Williams v. Lifestyle Lift Holdings, Inc.*, 175 Wn. App. 62, 71, 302 P.3d 523 (2013). The question here is whether the Timmermans' claim involves entrepreneurial aspects of South Sound's practices, or whether it is a mere negligence claim, which is exempt from the CPA. *Short*, 103 Wn.2d at 61.

In *Short v. Demopolis*, the Washington Supreme Court considered whether the practice of law falls within the CPA's definition of "trade or commerce." 103 Wn.2d at 55. There, Mr. Demopolis retained a law firm to represent him in dissolving a real estate partnership and in a real estate forfeiture action. *Short*, 103 Wn.2d at 53. Mr. Demopolis claimed that he specifically hired the partner with whom he consulted, but that the partner gave the actual legal work to a junior partner and an associate. *Short*, 103 Wn.2d at 53-54. The court held that certain entrepreneurial or business aspects of the practice of law fall within the CPA's definition of "trade or commerce;" for example, how the price of legal services is determined, billed, and collected, and the way that a law firm obtains, retains, and dismisses clients. *Short*, 103 Wn.2d at 60-61.

However, *Short* also held that the substantive quality of services an attorney provides does not fall within the definition of "trade or commerce." *Short*, 103 Wn.2d at 61. Further, *Short* held that claims "directed to the competence of and strategy employed" by attorneys constitute allegations of negligence or malpractice, and as such, are not actionable under the CPA. *Short*, 103 Wn.2d at 61-62. *Short* concluded that Mr. Demopolis's claims that his attorneys failed to gather essential facts, pursue certain claims, and file a timely judgment were all exempt from the CPA. *Short*, 103 Wn.2d at 61.

Similarly, in *Ramos v. Arnold*, Mr. and Mrs. Ramos filed a CPA claim against their real estate appraiser for failing to include residential defects in the appraisal report. *Ramos*, 141 Wn. App. at 16. The *Ramos* court determined that the complaint targeted the alleged inadequacy of the appraisal rather than the entrepreneurial aspect of the appraiser's business. *Ramos*, 141 Wn. App. at 20. Citing *Short*, the *Ramos* court held that the CPA did not apply because the CPA claim described an allegation of negligence. *Ramos*, 141 Wn. App. at 21 (citing 103 Wn. App. at 61-62).

Here, the Timmermans complain that South Sound, acting through Hall, failed to competently provide housing counseling, and as a result, the Timmermans were deprived of the opportunity to try to save their home from foreclosure. As in *Ramos*, the Timmermans target the alleged inadequacy of South Sound's professional services, namely its failure to help the Timmermans avoid foreclosure. The Timmermans do not target the entrepreneurial aspect of South Sound's business, like its accounting practices or practices related to soliciting and obtaining clients. Therefore, we hold that South Sound's actions do not constitute "trade or

commerce" for purposes of the CPA, and that the superior court properly dismissed their CPA claims on summary judgment.  *See Michael*, 165 Wn.2d at 603; *Nguyen*, 140 Wn. App. at 733. And because South Sound's actions did not occur in trade or commerce, we do not address the remaining elements of the Timmermans' CPA claim.  *Nguyen*, 140 Wn. App. at 733.

C.      *Intentional Infliction of Emotional Distress*

The Timmermans argue that the superior court erred by dismissing their claim of intentional infliction of emotional distress, also known as a claim of outrage.  Specifically, they argue that South Sound's failure to respond to communications and failure to refer them to mediation is outrageous conduct.  We hold that the Timmermans fail to demonstrate that South Sound's conduct was sufficiently outrageous to sustain a claim of intentional infliction of emotional distress, and we affirm summary judgment.

"Any claim of outrage must be predicated on behavior 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Strong v. Terrell*, 147 Wn. App. 376, 385, 195 P.3d 977 (2008) (internal quotation marks omitted) (quoting *Kloepfel v. Bokor*, 149 Wn.2d 192, 196, 66 P.3d 630 (2003)).  "The requirement of outrageousness is not an easy one to meet [and t]he level of outrageousness required is extremely high."  *Christian v. Tohmeh*, 191 Wn. App. 709, 736, 366 P.3d 16 (2015) (internal citation omitted).

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show that (1) the defendant engaged in extreme and outrageous conduct, (2) the defendant intentionally or recklessly inflicted emotional distress on the plaintiff, and (3) the plaintiff

actually suffered severe emotional distress. *Kloepfel*, 149 Wn.2d at 195. The elements of outrage are generally questions of fact for the jury. *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 869-70, 324 P.3d 763 (2014). However, at summary judgment, the superior court must "make an initial determination as to whether the conduct may reasonably be regarded as so 'extreme and outrageous' as to warrant a factual determination by the jury." *Sutton*, 180 Wn. App. at 869 (quoting *Doe v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 141 Wn. App. 407, 429, 167 P.3d 1193 (2007)). "When the conduct offered to establish the tort's first element is not extreme, a court must withhold the case from a jury notwithstanding proof of intense emotional suffering." *Brower v. Ackerley*, 88 Wn. App. 87, 101, 943 P.2d 1141 (1997).

Conduct related to and during a foreclosure can support a claim for outrage, but the plaintiffs must satisfy the high burden applicable to outrage claims. *Lyons*, 181 Wn.2d at 792-93 (citing *Vawter v. Quality Loan Serv. Corp. of Washington*, 707 F. Supp. 2d 1115, 1128 (W.D. Wash. 2010)). Allegations of "problematic, troubling, or even deplorable" conduct are insufficient to survive summary judgment on outrage where defendant's "actions do not involve physical threats, emotional abuse, or other personal indignities aimed at the [plaintiffs]." *Vawter*, 707 F. Supp. 2d at 1128.

Our Supreme Court has addressed outrage related to foreclosure and modifications of home loans. *Lyons*, 181 Wn.2d at 792. In *Lyons*, the plaintiff completed a loan modification that transferred the interest in the home to another lender. *Lyons*, 181 Wn.2d at 781. Despite the transfer of the interest, the trustee failed to confirm the proper beneficiary before issuing a notice

of trustee's sale in violation of the trustee's duty of good faith. *Lyons*, 181 Wn.2d at 781.

Further, the trustee failed to suspend the trustee's sale, even after receiving information that the

plaintiff had received a loan modification and was no longer in default. *Lyons*, 181 Wn.2d at

781. The plaintiff sued the trustee for its conduct related to the foreclosure. *Lyons*, 181 Wn.2d

at 781. The Court affirmed summary judgment dismissal, holding that the plaintiff's allegations

were not sufficiently outrageous to support a claim for outrage. *Lyons*, 181 Wn.2d at 793.

But, in comparison, allegations that a bank induced borrowers to default, and then

foreclosed on their property using a perjured declaration was sufficiently outrageous conduct to

survive summary judgment. *Lyons*, 181 Wn.2d at 792 (citing *Montgomery v. SOMA Fin. Corp.*,

C13-360 RAJ, 2014 WL 2048183 at *7 (W.D. Wash. May 19, 2014)).

Here, the only evidence the Timmermans cite to support their claim is that they e-mailed

South Sound to obtain a referral to mediation; South Sound agreed to refer the Timmermans to

mediation, but then failed to follow through; the Timmermans' home was foreclosed on; South

Sound promised to get the foreclosure rescinded, but then failed to do so; and South Sound failed

to communicate with the Timmermans throughout the process. Even taking the facts and

inferences in the light most favorable to the Timmermans, they have not demonstrated

sufficiently outrageous conduct to survive summary judgment.[3] *See Lyons*, 181 Wn.2d at 792.

We affirm.

---

[3] The Timmermans also argue that South Sound is responsible for Hall's intentional infliction of emotional distress under the doctrine of respondeat superior. Because the Timmermans fail to establish a claim of intentional infliction of emotional distress, we do not reach this issue.

No. 50954-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Maxa, C.J.

_____
Glasgow, J.

15